IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LAURA POWERS, NICHOLE PALMER, and JASON PALMER, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>CREDIT MANAGEMENT SERVICES, INC., DANA K. FRIES, JESSICA L. V. PISKORSKI, BRADY W. KEITH, MICHAEL J. MORLEDGE, and TESSA HERMANSON,<br><br>     Defendants. | 8:11CV436<br><br><br>ORDER<br>AND<br>FINDINGS AND<br>RECOMMENDATION |

  This matter is before the court on the plaintiffs' Motion for Class Certification (Filing No. 77). The plaintiffs filed a brief (Filing No. 78) and an index of evidence (Filing No. 79) in support of the motion. The defendants filed a brief (Filing No. 88) and an index of evidence (Filing No. 89) in opposition to class certification. The plaintiffs filed a brief (Filing No. 95) and index of evidence (Filing No. 98) in reply. The court held a hearing on February 28, 2013. A transcript of the hearing was filed on March 6, 2013. **See** Filing No. 104.

INTRODUCTION

  The plaintiffs, Laura Powers (Powers), Nichole Palmer, and Jason Palmer (Palmers) received collection complaints and discovery requests from the defendant, Credit Management Services, Inc. (CMS). Powers filed the instant action on December 18, 2011. **See** Filing No. 1 - Complaint. On January 23, 2012, the plaintiffs filed an amended complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA) and Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 - 59-1623 (NCPA) for the defendants' routine practices of filing collection complaints which represent that the defendants sought collection of the alleged debt more than 90 days prior to filing the state court action when in fact the defendants did not seek collection, sending standard discovery requests which mislead

and deceive consumers, and attempting to collect any amounts for attorney fees or interest without meeting the statutory requirements. **See** Filing No. 17 - Amended Complaint. The plaintiffs seek actual and statutory damages for the plaintiffs and each putative class member, costs, reasonable attorneys' fees, and declaratory and injunctive relief. *Id.* at 14-15.

## FACTUAL BACKGROUND

CMS is a Nebraska corporation with its principle place of business in Grand Island, Nebraska. **See** Filing No. 17 - Amended Complaint ¶ 5. Dana K. Fries (Fries), Tessa Hermanson (Hermanson), Jessica L. V. Piskorski (Piskorski), and Brady W. Keith (Keith) are in-house attorneys for CMS. *Id.* ¶ 6. Micheal J. Morledge (Morledge) is the sole owner of CMS. *Id.* ¶ 7. Powers and the Palmers are residents of Omaha, Nebraska. *Id.* ¶¶ 3-4.

On July 12, 2011, CMS filed its standard county court collection complaint against Powers in the County Court of Douglas County, Nebraska (Powers Complaint). *Id.* ¶ 10. Fries, Hermanson, Piskorski, and Keith are listed as attorneys for CMS in the Powers Complaint. *Id.* Hermanson signed the Powers Complaint. **See** Filing No. 17-1 - Powers Complaint. CMS sought to collect the following: "[The service provider] provided goods, services and/or labor to Defendant(s) and/or family members of Defendant(s). The reasonable value or agreed amount of these services is $454.00 and such is a liquidated amount." **See** Filing Nos. 17 - Amended Complaint ¶ 11; 17-1 - Powers Complaint. CMS also sought "prejudgment interest of $224.48 from 4/25/2007 to 6/7/2011, pursuant to Sec. 45-104 and accruing prejudgment interest and attorney fees, as allowable by law." **See** Filing Nos. 17 - Amended Complaint ¶ 13; 17-1 - Powers Complaint. The Powers Complaint states "[m]ore than 90 days have elapsed since the presentation of this claim." **See** Filing Nos. 17 - Amended Complaint ¶ 14, 17-1 - Powers Complaint.

Powers filed an answer on September 9, 2011, and an amended answer on November 21, 2011, in county court, disputing the debt and indicating the claim was outside the relevant statute of limitations. **See** Filing No. 17 - Amended Complaint ¶ 16. Powers moved for summary judgment based on the statute of limitations argument and

2

CMS amended its complaint. *Id.* ¶ 17. CMS served discovery on Powers (Powers Discovery), which did not include a date or notice of service. *Id.* ¶ 18. CMS's interrogatories requested Powers' "full name(s) and address(es) of your present place(s) of employment, your length of tenure, the regularity with which you receive compensation, whether it is weekly, biweekly, monthly or other, and your present rate of compensation." **See** Filing Nos. 17 - Amended Complaint ¶ 21; 17-2 - Powers Discovery. CMS's requests for production of documents requested "the three most recent tax returns filed by the Defendant [and] the three most recent payroll stubs from defendant's employment." **See** Filing Nos. 17 - Amended Complaint ¶ 21; 17-2 - Powers Discovery. During the course of attempting to collect the alleged debt, CMS contacted Powers' employer and left her social security number on a company-wide voice mail. **See** Filing No. 17 - Amended Complaint ¶ 24.

On July 26, 2011, CMS filed its standard county court collection complaint against the Palmers in the County Court of Douglas County, Nebraska (Palmers Complaint). **See** Filing Nos. 17 - Amended Complaint ¶ 25; 17-3 - Palmers Complaint. Fries, Hermanson, Piskorski, and Keith are listed as attorneys for CMS in the Palmers Complaint. *Id.* Fries signed the Palmers Complaint. **See** Filing No. 17-3 - Palmers Complaint. Using the same terminology as the Powers Complaint, the Palmers Complaint listed three service providers and a total debt of $856.38. **See** Filing Nos. 17 - Amended Complaint ¶¶ 26-28; 17-3 - Palmers Complaint. CMS also sought prejudgment interest from the Palmers. **See** Filing Nos. 17 - Amended Complaint ¶ 30; 17-3 - Palmers Complaint. The Palmers Complaint states "[m]ore than 90 days have elapsed since the presentation of this claim." **See** Filing Nos. 17 - Amended Complaint ¶ 31; 17-3 - Palmers Complaint. The Palmers filed an answer on August 31, 2011. **See** Filing No. 17 - Amended Complaint ¶ 32. CMS sought discovery from the Palmers identical to the Powers Discovery. **See** Filing Nos. 17 - Amended Complaint ¶¶ 37-38; **compare** 17-5 - Palmers Discovery **with** Filing No. 17-2 - Powers Discovery.

## ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure governs the requirements for establishing and maintaining certification for a class action lawsuit. "In order to obtain

3

class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." **Coleman v. Watt**, 40 F.3d 255, 258-59 (8th Cir. 1994).

> Rule 23(a) provides:
>
>> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> Fed. R. Civ. P. 23(a).

The United States Supreme Court has summarized the four basic requirements as these: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. **Amchem Prods., Inc. v. Windsor**, 521 U.S. 591, 613 (1997). The determination under Rule 23(a) is not perfunctory, "the court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." **Elizabeth M. v. Montenez**, 458 F.3d 779, 784 (8th Cir. 2006) (**quoting Gen. Tel. Co. of the S.W. v. Falcon**, 457 U.S. 147, 161 (1982)). "Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim." **Wal-Mart Stores, Inc. v. Dukes**, 131 S. Ct. 2541, 2551 (2011) (internal citations omitted).

"Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their . . . claims as a class action." **Blades v. Monsanto Co.**, 400 F.3d 562, 568-69 (8th Cir. 2005) (**citing Amchem**, 521 U.S. at 614). Rule 23(b) allows a class action if (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate and the class action is a superior method for adjudication. **See** Fed. R. Civ. P. 23(b).

In addition to the Rule 23(a) and (b) requirements, pursuant to Rule 23(c)(1)(B): "An order that certifies a class action must define the class and the class claims, issues,

4

or defenses, and must appoint class counsel under Rule 23(g)." The plaintiffs propose a class action on behalf of four classes pursuant to Fed. R. Civ. P. 23. The first class, known as "FDCPA Class One," consists of:

> [A]ll persons with addresses in Nebraska to whom Defendants sent, or caused to be sent, a county court collection complaint in the form of Exhibit A or C or such a CMS collection lawsuit was pending or proceeding in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes during the period one year prior to the date of filing this action.

**See** Filing No. 77 - Motion for Class Certification p. 1-2. The second class, known as "FDCPA Class Two," consists of:

> [A]ll persons with addresses in Nebraska to whom Defendants sent, or caused to be sent discovery requests in the form of Exhibit B or D in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes during the period one year prior to the date of filing this action.

*Id.* at 2. The third class, known as "NCPA Class One," consists of:

> [A]ll persons with addresses in Nebraska to whom Defendants sent, or caused to be sent, a county court collection complaint in the form of Exhibit A or C or such a CMS collection lawsuit was pending or proceeding in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes during the period four years prior to the date of filing this action.

*Id.* The fourth class, known as "NCPA Class Two," consists of:

> [A]ll persons with addresses in Nebraska to whom Defendants sent, or caused to be sent discovery requests in the form of Exhibit B or D in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes during the period four years prior to the date of filing this action.

5

*Id.* at 2-3.

The plaintiffs contend the defendants' standard collection complaints and discovery requests violate the FDCPA and the NCPA. **See** Filing No. 78 - Brief p. 3-14. The plaintiffs argue the defendants' policy and practice to represent in the standard collection complaint that "more than 90 days have elapsed since the presentation of this claim" violates Neb. Rev. Stat. § 25-1801 because the defendants do not routinely send claims to consumers and defendants rely on the original creditor's billing statement. *Id.* at 9-10. The plaintiffs argue CMS, due to assignment, is the only one who has right to payment, therefore CMS is required to send a demand. *Id.* The plaintiffs argue the defendants wrongfully demand and collect prejudgment interest without meeting statutory requirements. *Id.* at 11. The plaintiffs also argue the defendants' discovery request instructions do not advise consumers of their legal right to object to producing requested documents, which misleads and confuses consumers. *Id.* at 7. Additionally, the plaintiffs argue the defendants' discovery requests improperly omit the time, place, and manner of inspection. *Id.* at 8. The plaintiffs argue the defendants' discovery requests seek irrelevant information and mislead unsophisticated consumers. *Id.* at 4.

The defendants deny class certification is appropriate in this matter because individualized inquiries are needed for resolution of the plaintiffs' claims. **See** Filing No. 88 - Response p. 18. The defendants argue determining whether the underlying collection documents complied with applicable law will depend upon discreet analysis of thousands of individual complaints and specific discovery requests. *Id.* The defendants also argue certification would require multiple subclasses because each particular collection document was not prepared and signed by each in-house attorney. *Id.* at 19. Additionally, the defendants argue the plaintiffs are inadequate class representatives because the plaintiffs are subject to unique defenses. *Id.* at 21-24. The defendants also argue individual class members' recovery would be *de minimis* which disfavors class certification. *Id.*

The court will review, seriatim, each of the requirements the plaintiffs must satisfy with regard to class certification.

**A. Rule 23(a) Requirements**

6

### 1. Numerosity

The first prerequisite the plaintiffs must meet under Rule 23(a) is numerosity. ***Amchem***, 521 U.S. at 613. Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable." **See** Fed. R. Civ. P. 23(a)(1). Rule 23(a) "requires only the impracticality, not the impossibility, of joinder." ***U. S. Fid. & Guar. Co. v. Lord***, 585 F.2d 860, 870 (8th Cir. 1978). The plaintiffs need only show "that joining all members of the class would be difficult." ***Caroline C. By & Through Carter v. Johnson***, 174 F.R.D. 452, 462 (D. Neb. 1996) (citations omitted). "There is no magic number for proving numerosity, but courts have stated as few as forty class members is sufficient to show joinder is impracticable." ***Harris v. D. Scott Carruthers & Assoc.***, 270 F.R.D. 446, 450 (D. Neb. 2010) (**citing *Hale v. AFNI, Inc.***, 264 F.R.D. 402, 404 (N.D. Ill. 2009)). "The Eighth Circuit has not established strict requirements regarding the size of a proposed class." ***Estate of Mahoney v. R.J. Reynolds Tobacco Co.***, 204 F.R.D. 150, 153 (S.D. Iowa 2001).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class . . . ." ***Cortez v. Nebraska Beef, Inc.***, 266 F.R.D. 275, 289 (D. Neb. 2010) (**quoting *Evans v. U.S. Pipe & Foundry Co.***, 696 F.2d 925, 930 (11th Cir. 1983)). "[W]here the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." ***Id.*** Typically, the court may rely on the pleadings, however "it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met." ***Chesher v. Neyer***, 215 F.R.D. 544, 546 (S.D. Ohio 2003) (**citing *Gen. Tel. Co. of S.W.***, 457 U.S. at 160).

The plaintiffs argue the number of persons who received the defendants' complaints far exceeds 27,000. **See** [Filing No. 78](#) - Brief p. 17. CMS admitted more than 5000 Nebraska consumers were sent documents in the forms of Exhibits A, B, C, and D. **See** [Filing No. 79-10](#) - Defendants' Responses to Discovery p. 3-5. The plaintiffs argue numerosity is established by simply looking at information obtained from the Nebraska Supreme Court JUSTICE website which shows CMS filed thousands of complaints. **See** [Filing No. 78](#) - Brief p. 18.

In the instant case, the plaintiffs have presented evidence each class numbers in the thousands. The defendants do not appear to dispute numerosity. After consideration of the number of persons in the proposed classes, the nature of the action, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds the plaintiffs satisfy the numerosity requirement.

### 2. Commonality

Second, the plaintiffs must prove the element of commonality. **Amchem**, 521 U.S. at 613. Rule 23(a)(2) requires there be "questions of law or fact common to the class." **See** Fed. R. Civ. P. 23(a)(2). "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" **DeBoer v. Mellon Mortg. Co.**, 64 F.3d 1171, 1174 (8th Cir. 1995) (**quoting Paxton v. Union Nat. Bank**, 688 F.2d 552, 561 (8th Cir. 1982)). However, "[t]he rule does not require that every question of law or fact be common to every member of the class." **Paxton**, 688 F.2d at 561. "[T]he commonality requirement imposes a very light burden on the Plaintiff seeking to certify a class and is easily satisfied." **In re Hartford Sales Practices Litig.**, 192 F.R.D. 592, 603 (D. Minn. 1999). "In the context of an FDCPA class-action case, some courts have stated commonality is established when the plaintiff alleges that all class members received the same collection notice." **Harris**, 270 F.R.D. at 451. Nevertheless, Rule 23(a)(2) "language is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions"'". **Wal-Mart Stores**, 131 S. Ct. at 2551 (**quoting** Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). The Court stated in **Wal-Mart Stores**:

> What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.*

The plaintiffs argue the defendants sent each class member the same standard collection complaints and discovery requests. **See** Filing No. 78 - Brief p. 23. The plaintiffs argue commonality is satisfied because the plaintiffs received the same type of collection documents. *Id.* The plaintiffs argue these classes involve common questions of whether the defendants' collection documents violate the FDCPA and the NCPA. *Id.*

The defendants argue commonality is lacking because individualized inquires would be required to decide whether each defendant violated the FDCPA and the NCPA with respect to each putative class member. **See** Filing No. 88 - Response p. 18. The defendants argue naming the in-house attorneys for CMS as individual defendants increases the complexity of this action. *Id.* at 19. The defendants argue each in-house attorney did not review and sign every collection document during the periods in issue. *Id.* Thus, the defendants argue a particularized inquiry is necessary to determine which in-house attorney signed particular collection documents in dispute. *Id.* Additionally, the defendants argue the defendants' documents were not always in the form of Exhibits A, B, C, and D. *Id.* Lastly, the defendants argue not all in-house attorneys worked at CMS during the periods in issue. *Id.*

The plaintiffs satisfied the element of commonality. The defendants sent documents in the form of Exhibits A, B, C, or D. **See** Filing No. 85-2 - Hermanson Depo. p. 32-33, 53-54. There is a common question of law whether the defendants' collection documents violated the FDCPA and the NCPA. Additionally, while slight variations may exist between the individual debtors (i.e. names, address, etc.), such variations do not defeat commonality. The defendants' argument that not all collection documents were always in the form of Exhibits A, B, C, and D does not defeat commonality. A simple review of the documents will verify the disputed documents are in the form of Exhibits A, B, C, or D. Nevertheless, the defendants have used collection documents in the form of Exhibits A, B, C, and D for "at least back to . . . four years." **See** *id.* at 32, 52-53. Although each of the defendant in-house attorneys did not sign each collection document sent to putative class members, all of the in-house attorneys were listed on the state court complaints and discovery requests. **See** Filing Nos. 17-1 - Exhibit A, 17-2 - Exhibit B, 17-3 - Exhibit C, and 17-5 - Exhibit D. Lastly, common questions of law exist even though, as the defendants argue, not all defendant in-house

attorneys were employed during the periods in issue. Individual defendant liability, if any, is determined at a later stage in the proceedings.

### 3. Typicality

Third, the class representatives have the burden to show typicality of their claims in relation to the other putative members of the class. **Amchem**, 521 U.S. at 613. Rule 23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class." **See** Fed. R. Civ. P. 23(a)(3). The Eighth Circuit, "long ago defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." **Chaffin v. Rheem Mfg. Co.**, 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotations and citations omitted). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." **Alpern v. UtiliCorp United, Inc.**, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." **DeBoer**, 64 F.3d at 1174. However, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." **Elizabeth M.**, 458 F.3d at 787.

The plaintiffs argue typicality is inherent in the class definitions because the defendants sent each of the putative class members the same standard collection complaints and discovery requests. **See** Filing No. 78 - Brief p. 25. The plaintiffs argue each of the putative class members were subjected to the same violations as the named plaintiffs. **Id.** The defendants rely on the their arguments made to contest commonality to contest typicality. **See** Filing No. 88 - Response p. 17-21.

The plaintiffs have met the requirements for typicality. The potential class members' legal complaint is the result of a similar event where the defendants sent each class member standard collection complaints and discovery requests which might violate the FDCPA or the NCPA. **See Harris**, 270 F.R.D. at 452 (finding form letters sent to class members that purport to violate the FDCPA fulfills the typicality prong). As

was the case with commonality, the distinctions asserted by the defendants are not sufficient to defeat typicality. **See** *id.*

### 4. Adequacy of Representation

The fourth prerequisite a plaintiff must meet under Rule 23(a) for class certification is adequacy of representation. ***Amchem***, 521 U.S. at 613. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." **See** Fed. R. Civ. P. 23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." ***Paxton***, 688 F.2d at 562 (**citing *Gonzales v. Cassidy***, 474 F.2d 67, 72 (6th Cir. 1973)).

The plaintiffs argue they understand their responsibilities as the class representatives. **See** Filing No. 78 - Brief p. 26. The plaintiffs argue their interests are coincident with the general interests of the putative class members. *Id.* The plaintiffs argue there is no potential conflict of interest or antagonism between the named plaintiffs and putative class members. *Id.* at 29. The plaintiffs also argue counsel will adequately represent the classes' interests. *Id.* at 29-30.

The defendants argue the named plaintiffs will not adequately represent the proposed classes. **See** Filing No. 88 - Response p. 22. The defendants state the plaintiffs allege the defendants' collection documents were confusing. *Id.* However, the defendants argue attorneys represented the named plaintiffs in the underlying collection court actions thus the named plaintiffs were not actually mislead or confused. *Id.* The defendants argue the plaintiffs' interests are also divergent. *Id.* at 23.

In reply, the plaintiffs argue the plaintiffs' case is not solely about confusion but is also about the defendants improperly seeking irrelevant tax returns, pay stubs, employment information, attorney fees, and interest. **See** Filing No. 95 - Reply p. 7-9. The plaintiffs argue regardless of whether the plaintiffs were confused, violations of the FDCPA are analyzed "through the eyes of an unsophisticated consumer." *Id.* (**citing *Peters v. Gen. Serv. Bureau, Inc.***, 277 F.3d 1051, 1055 (8th Cir. 2002)).

The plaintiffs have shown they share a common interest with the putative class members and that, as the class representatives, they will vigorously prosecute the interests of the class through qualified counsel. There is no indication, as the defendants argue, the plaintiffs' interests are divergent or opposed. The plaintiffs demonstrated a strong understanding of their case, their responsibilities to the class, and the expectations as class representatives. **See** Filing Nos. 79-1 - Powers' Decl.; 79-2 - Mrs. Powers' Decl.; 79-3 - Mr. Powers' Decl. Additionally, counsel is qualified to represent the class based on counsels' affidavits. **See** Filing Nos. 79-4 - Car Decl.; 74-9 - Reinbrecht Decl.

B.  Rule 23(b)(3) Requirements

For class certification, the plaintiffs must also prove this action may be maintained under Rule 23(b)(1), (2), or (3). Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." **See** Fed. R. Civ. P. 23(b)(3). "The requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." ***Bryant v. Bonded Accounts Serv./Check Recovery***, 208 F.R.D. 251, 261 (D. Minn. 2000).

1.  **Predominance**

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." ***Amchem***, 521 U.S. at 623 (**citing** 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, ***Federal Practice and Procedure § 1777***, p. 518-19 (2d ed. 1986)). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." ***Jenkins v. Raymark Indus., Inc.***, 782 F.2d 468, 472 (5th Cir. 1986). "Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist." ***D'Alauro v. GC Servs. Ltd. P'Ship***, 168 F.R.D.

451, 458 (E.D.N.Y. 1996) (citation omitted).  "[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."  *Harris*, 270 F.R.D. at 453 (**quoting** *Jenkins*, 782 F.2d at 472) (alteration in original).

The plaintiffs argue the common issue of whether the defendants' collection complaints and discovery requests sent to putative class members violate the FDCPA and the NCPA predominates.  **See** [Filing No. 78](#) - Brief p. 31.  The plaintiffs also argue the defendants' standard conduct was to send collection complaints and discovery requests in the form of Exhibits A, B, C, and D.  *Id.* at 31-32.

The defendants argue individualized proof is required for each putative class member, which defeats any common issues of fact and law.  **See** [Filing No. 88](#) - Response p. 25.  The defendants argue whether the defendants lawfully initiated collection actions depends on:  1) the complaints and requests sent to debtors and 2) if and how the debtors responded.  *Id.* at 26.  The defendants argue the court would have to review a number of different complaints, discovery requests, and service documents to address liability issues.  *Id.*  The defendants also argue the effort to gather all the necessary information would require substantial hours.  *Id.*  Lastly, the defendants argue an individual inquiry would be necessary to determine individual damages.  *Id.*

Similar to the analysis of the Rule 23(a) prongs of commonality and typicality, factual differences among the class members are inherent in all class action law suits.  The common issue in this case is whether the defendants sent each class member standard collection complaints and discovery requests, which violate the FDCPA and the NCPA.  **See** *Evans v. Am. Credit Sys., Inc.*, 222 F.R.D. 388, 395 (D. Neb. 2004) (finding that an essential link among all putative class members is the receipt of certain letters that violate the FDCPA).  Because of the standardized nature of the defendants' conduct, common questions predominate.  Such conduct allegedly includes filing similar collection complaints (Exhibits A and C), sending similar collection discovery (Exhibits B and D), improperly demanding attorney fees and interest, and improperly demanding irrelevant discovery.  Additionally, potential differences in class members' actual damages do not defeat class certification.  **See** *Mund v. EMCC, Inc.*, 259 F.R.D. 180,

186 (D. Minn. 2009) (noting individual class members' differing damages does not preclude finding the predominance requirement is satisfied). Nevertheless, if differing damages exist, the parties can reference the defendants' record system, which indicates collection of legal fees and interest, to determine a class members' damages. The plaintiffs have shown the common legal question among class members predominates individual claims.

### 2. Superiority

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." **See** Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Estate of Mahoney*, 204 F.R.D. at 161 (**quoting** *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. . . . [It] will create judicial *dis* economy." *Estate of Mahoney*, 204 F.R.D. at 161 (**quoting** *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 94 (W.D. Mo. 1997)) (emphasis in original).

The plaintiffs argue a class action is the superior method available for the adjudication of these claims. **See** Filing No. 78 - Brief p. 37. The plaintiffs argue a class action is a more efficient and consistent means of trying the legality of the defendants' standard practice of sending standard collection complaints and discovery requests. *Id.* at 35-37.

The defendants argue a class action is not a superior method because at best, individual class members will receive a *de minimis* recovery because of the defendants' negative net-worth. **See** Filing No. 88 - Response p. 27. The defendants argue recovery would be in the range of cents, not dollars. *Id.* at 27-28. The defendants also argue the difficulties in managing a class action are significant. *Id.* at 30-31. Additionally, the defendants argue the class definitions are improper because the class definition includes debtors who have litigated, lost, and paid CMS pursuant to a judgment. *Id.* at 32. The defendants argue the court would have to "undo" judgments

14

entered and the doctrine or *res judicata* prevents this court from re-litigating a class members' cases. *Id.*

In reply, the plaintiffs contest the defendants' expert's affidavit of the defendants' net-worth. **See** Filing No. 95 - Reply p. 35. The plaintiffs argue the defendants, after steadfastly refusing to respond to the plaintiffs' net-worth discovery, provide last minute and insufficient net-worth information. *Id.* at 35-36. The plaintiffs argue the defendants have not provided necessary audited financial statements demonstrating the defendants' net-worth. *Id.* The plaintiffs argue before the court considers net-worth, the plaintiffs should be allowed to question the defendants unverified net-worth conclusions through the discovery process, which is the subject of the pending motion to compel. *Id.*

The plaintiffs also argue the defendants' unsubstantiated statement that managing this class would present significant problems does not preclude class certification. *Id.* at 29. The plaintiffs argue the defendants record system is highly computerized and monthly reports are available showing debtors' information and revenues received from debtors. *Id.* (**citing** Filing No. 97-8 - Garrett Depo. and Ex. 16 - Palmer Account Collection Notes). Lastly, the plaintiffs argue the defendants waived the affirmative defense of *res judicata* because the defendants did not assert such defense in their answers. *Id.* at 24. The plaintiffs argue, even if *res judicata* applies, the class definition is proper and *res judicata* does not preclude class certification. *Id.* The plaintiffs argue *res judicata* is inapplicable because the plaintiffs do not seek to alter or amend state court judgments. *Id.* at 27. The plaintiffs argue they are not challenging underlying state court judgments against a class member, rather they are challenging the defendants' collection practices. *Id.* at 26.

Resolution of the plaintiffs' claims through a class action rather than through hundreds or thousands of individual actions seeking damages is the superior approach. The defendants' negative net-worth argument does not preclude class certification. The defendants' expert's report regarding the defendants' net-worth is insufficient to demonstrate the defendants have a negative net-worth. **See** *Mund*, 259 F.R.D. at 186-87 (certifying a class when the defendant provided insufficient evidence of negative net-worth and the plaintiffs had otherwise fulfilled the requirements of Rule 23). Although

15

recovery may be limited, the "purpose[ ] behind class actions [is to] eliminat[e] the possibility of repetitious litigation and provid[e] small claimants with a means of obtaining redress for claims too small to justify individual litigation." *DeBoer*, 64 F.3d at 1175. Additionally, *res judicata* does not bar certification in this matter. The causes of action raised in this matter are not the same as those raised in the state court collection matters. **See** *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) ("[R]es judicata . . . bars relitigation of a . . . claim if the prior judgment was a final judgment on the merits rendered by a court of competent jurisdiction, and if the same cause of action and the same parties or their privies were involved in both cases."). The plaintiffs are contesting the defendants' collection practices and not whether debt was owed as determined in the judgments entered in underlying state court actions. **See** Filing No. 17 - Amended Complaint. The court finds a class action would be a superior method for fair and efficient adjudication of this matter for both the FDCPA and the NCPA classes.

**IT IS RECOMMENDED TO JUDGE JOSEPH F. BATAILLON that**:

The plaintiffs' Motion for Class Certification (Filing No. 77) be granted to include:

1. All persons with addresses in Nebraska to whom Defendants sent, or caused to be sent, a county court collection complaint in the form of Exhibit A or C or such a CMS collection lawsuit was pending or proceeding in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes during the period one year prior to the date of filing this action.
2. All persons with addresses in Nebraska to whom Defendants sent, or caused to be sent discovery requests in the form of Exhibit B or D in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes during the period one year prior to the date of filing this action.
3. All persons with addresses in Nebraska to whom Defendants sent, or caused to be sent, a county court collection complaint in the form of Exhibit A or C or such a CMS collection lawsuit was pending or proceeding in an attempt to collect an alleged debt which, as shown by

      the nature of the alleged debt, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes during the period four years prior to the date of filing this action.
4. All persons with addresses in Nebraska to whom Defendants sent, or caused to be sent discovery requests in the form of Exhibit B or D in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes during the period four years prior to the date of filing this action.

**IT IS ORDERED**:

The undersigned will hold a planning conference ten days following the court's ruling on the Findings and Recommendation. The plaintiffs' counsel shall arrange and initiate the conference call with the undersigned magistrate judge and participating counsel.

## ADMONITION

Pursuant to [NECivR 72.2](#) any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 14th day of March, 2013.

                                            BY THE COURT:

                                            s/ Thomas D. Thalken
                                            United States Magistrate Judge