IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LAURA POWERS, NICHOLE PALMER, and JASON PALMER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CREDIT MANAGEMENT SERVICES, INC., DANA K. FRIES, TESSA HERMANSON, JESSICA L. V. PISKORSKI, BRADY W. KEITH, and MICHAEL J. MORLEDGE,<br><br>Defendants. | **8:11CV436**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the defendant's objection (Filing No. 107) to the magistrate judge's findings and recommendations (Filing No. 105) granting the plaintiffs' motion to certify class (Filing No. 77). The court conducted a *de novo* review of the magistrate judge's findings pursuant to 28 U.S.C. § 636(b)(1) and NECivR 72.3. The court reviewed the full record, including the plaintiff's brief and index of evidence (Filing Nos. 78, 79, 95, 97, & 98), the defendants' brief and index of evidence (Filing Nos. 88 & 89), and the transcript of the class certification hearing (Filing No. 104). The court concludes that the magistrate judge's findings and recommendations should be adopted in their entirety.

## BACKGROUND

Credit Management Services, Inc. (CMS) is a corporation with its principal place of business in Grand Island, Nebraska. Michael J. Morledge is the sole owner of CMS. The company employs four in-house attorneys: Danna K. Fries (Fries), Tessa Hermanson (Hermanson), Jessica L.V. Piskorski (Piskorski), and Brady W. Keith (Keith). CMS is in the business of collecting debts from consumers. CMS routinely files

standardized collection complaints and discovery requests to collect from debtors. The forms used in these complaints and requests have remained largely unchanged for at least four years.

On July 12, 2011, CMS filed its standardized collection complaint against Laura Powers (Ms. Powers) in the County Court of Douglas County, Nebraska. Exhibit A, Filing No. 17-1. The complaint alleges that Ms. Powers owed $454.00 to "GIKK ORTHO SPECIALISTS." The complaint demands that she pay this amount in addition to attorney fees and a prejudgment interest of $224.48 accruing from April 25, 2007, to June 7, 2011. The complaint also states that "[m]ore than 90 days have elapsed since the presentation of this claim." CMS lists all of its in-house attorneys on the claim (Fries, Hermanson, Piskorski, and Keith), but only Hermanson's signature appears on the document.

Ms. Powers disputed the claim in county court and motioned for summary judgment because CMS made the claim outside of the relevant statute of limitations. In response, CMS changed the cause of action in the complaint. CMS then served Ms. Powers with a discovery request. Exhibit B, Filing No.17-2. Question 3 of CMS's interrogatory asks for the "full name(s) and address(es) of your present place(s) of employment, your length of tenure, the regularity with which you receive compensation, whether it is weekly, biweekly, monthly or other, and your present rate of compensation." *See* Filing No. 17-2 at 5. The discovery request also includes a request for production of documents, in which CMS demands "the three most recent tax returns filed by the Defendant [and] the three most recent payroll stubs from defendant's employment." *Id.* at 6. CMS's four in-house attorneys are listed in the signature block

of this document.  While attempting to collect from Ms. Powers, CMS called her place of employment and left a company-wide voicemail containing her Social Security number.

On July 26, 2011, CMS filed its standardized collection complaint against Nichole and Jason Palmer (the Palmers) in the County Court of Douglas County.  Exhibit C, Filing No. 17-3.  The complaint alleges that the Palmers owed a total of $856.38 to three separate service providers.  The format and terminology of the Palmer complaint is nearly identical to the Powers complaint.  Similar to the Powers complaint, the Palmer complaint seeks attorney fees and prejudgment interest and asserts that "[m]ore than 90 days have elapsed since the presentation of this claim."  Comparable to the Powers complaint, only one in-house attorney's signature appears on the document, but the names of all four attorneys are present in the signature block.[1]  The Palmers filed an answer to the complaint in August of 2011.  CMS then served the Palmers with a discovery request similar to the one served to Ms. Powers.  Exhibit D, Filing Nos. 17-4 & 17-5.  CMS also made a phone call to the Palmers' household.

Ms. Powers and the Palmers allege that CMS's collection complaints violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), and the Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 – 59-1623 (NCPA). They assert that the collection complaints violate the FDCPA and the NCPA because the documents suggest that CMS routinely presents a claim to debtors 90 days prior to filing the complaint in county court when in fact CMS does not engage in this practice.[2] Additionally, the plaintiffs contend that the complaints seek to collect prejudgment

---

[1] Fries signed the complaint in this case.

[2] CMS routinely filed the complaint 90 days after the original creditor made the demand.  CMS did not regularly send its own demand 90 days prior to filing.

interest and attorney's fees without adequate statutory support. Finally, Ms. Powers and the Palmers contend that CMS's discovery requests violate the FDCPA and the NCPA because they are misleading and attempt to collect sensitive financial information from consumers that is irrelevant to the case.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Ms. Powers and the Palmers requested class certification on behalf of the following four classes pursuant to Fed. R. Civ. P. 23. The first FDCPA class consists of all Nebraska residents who received a county court collection complaint from CMS in the form of Exhibits A or C within the last year. The second FDCPA class consists of all Nebraska residents who received a discovery request from CMS in the form of Exhibits B or D within the last year. The first NCPA class consists of all Nebraska residents who received a county court collection complaint from CMS in the form of Exhibits A or C within the four years. The second NCPA class consists of all Nebraska residents who received a discovery request from CMS in the form of Exhibits B or D within the last four years. *See* Filing No. 77, Motion for Class Certification.

## MAGISTRATE JUDGE'S FINDINGS

The magistrate judge found that the plaintiffs satisfied all four of the 23(a) class certification requirements. The magistrate judge found that the plaintiffs met the numerosity, commonality, typicality, and adequacy of representation requirements. The magistrate judge also determined that the plaintiffs satisfied the 23(b)(3) requirements of predominance and superiority. Thus, the magistrate judge recommended certification of the four requested classes and concluded that the case should move forward as a class action lawsuit.

## DISCUSSION

The court conducts a *de novo* review of the magistrate judge's findings. "Rigorous analysis" is necessary to ensure that the plaintiffs satisfied all Rule 23 requirements for certifying a class. *Elizabeth M. v. Montenez,* 458 F.3d 779, 784 (8th Cir. 2006) (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)). This rigorous analysis often results in some overlap with the merits of the plaintiff's claim. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). A certified class must meet all the requirements discussed in Rule 23(a) and fit within one of the categories outlined in rule 23(b). *See* Fed. R. Civ. P. 23.

### A. Rule 23(a) Requirements

In order to certify a class to begin a class action lawsuit, Rule 23(a) necessitates that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2)  there are questions of law or fact common to the class;
> (3) the claim or defenses of the representative parties are typical to the claims or defenses of the class; and
> (4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four 23(a) requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). All four must be satisfied to certify a class.

### 1. Numerosity

Rule 23(a)(1) governs numerosity. To become certified under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." There are no strict guidelines in the Eighth Circuit regarding the class size required to satisfy numerosity. *See Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150,

153 (S.D. Iowa 2001). Other courts have determined that "as few as forty class members is sufficient to show joinder is impracticable." *Harris v. D. Scott Carruthers & Assoc.,* 270 F.R.D. 446, 450 (D. Neb. 2010) (citing *Hale v. AFNI, Inc.*, 264 F.R.D. 402, 404 (N.D. Ill. 2009)).

The plaintiffs contend that over 27,000 Nebraska residents received CMS complaints in the applicable time frame. The defendants concede that it sent these documents to over 5,000 individuals. Therefore, the court finds the numerosity requirement is met in this case. The court also notes that the defendants do not dispute this issue.

## 2. Commonality & Typicality

Rule 23(a)(2) governs commonality. To become certified under Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is met when the legal issue "linking the class members is substantially related to the resolution of the litigation." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (quoting *American Finance Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D.Md. 1974). However, it is not required that every issue in the case be shared by each class member. *Id.* at 561. It is sufficient to base a class action upon a "common contention . . . capable of classwide resolution." *Wal-Mart Stores* 131 S. Ct. at 2551. The burden on the plaintiff to establish commonality is "very light . . . and is easily satisfied." *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn 1999).

Rule 23(a)(3) governs typicality. Rule 23(a)(3) requires that "the claim(s) . . . of the representative parties are typical to the claims or defenses of the class" to certify a class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied when class members' claims arise from the same event or conduct, even if factual differences exist

between individual cases. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden on the plaintiff to prove typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Id.* (quoting *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1174 (8th Cir. 1995)). Typicality is not established, however, when "proof of a violation requires individualized inquiry." *Elizabeth M.*, 458 F.3d 779, 787 (8th Cir. 2006).

The defendants contest the plaintiffs' assertion of commonality and typicality using the same arguments. First, the defendants contend that the court should not certify the putative classes because this case necessitates a separate review of individual claims. The defendants list nine factors that they believe the court is required to review for each claim. Filing No. 107 at 4. The factors listed include: (1) which pleadings contain similar terms, (2) whether or not the debtor was actually served, (3) the manner in which the claim was presented, (4) whether it was liquidated or unliquidated, (5) whether individuals responded, (6) whether debtors were represented by counsel, (7) whether debtors objected, (8) whether judgments were entered, and (9) what attorneys CMS employed at the time.

In considering these proposed factors, it is important to remember the main issue in this case: whether CMS's complaints in the form of Exhibits A & C and discovery requests in the form of Exhibits B & D violate the FDCPA and/or the NCPA. Several of the defendants' proposed factors are completely irrelevant, such as whether the debtor initially sought legal counsel. Other factors, such as the existence of prior judgments, merely affect potential damages. The only individual inquiry required that is relevant to the central issue in the case is a brief review of individual documents to determine if they are in the form of Exhibits A, B, C, or D. This should not be a difficult task, as

7

Hermanson's deposition indicates that CMS used essentially the same documents for nearly four years.

As part of their argument in this regard, the defendants contend that class certification is improper because the plaintiffs brought the action against all four in-house attorneys in addition to CMS. The defendants claim that only one attorney drafts and signs each collection complaint and discovery request. The court notes, however, that all four attorneys' names appear in the signature block on most of the documents in question. The defendants also assert that all four attorneys did not work for CMS during the entire period in question. Specifically, Keith was absent for a portion of the period at issue. For these reasons, the defendants contend that all four attorneys should not be held accountable for every document. The defendants argue that the varying involvement of in-house attorneys combined with the absence of some attorneys during the applicable period necessitates the creation of multiple subclasses. The defendants allege that this division renders a class action an ineffective method for litigating this issue.

The court notes that the process of reviewing signature blocks is not so onerous that it renders the class action ineffective. Additionally, as the magistrate judge noted, the question of individual defendant liability should be addressed at a later stage in the proceedings, not in the motion to certify class.

Finally, the defendants assert that the magistrate judge's recommendation is inconsistent with precedent in this district. The defendants point to *Jenkins v. General Collection*, in which the court rejected a motion to certify class. *Jenkins v. General Colllection*, Case No. 8:06CV743, 2008 WL 4104677 (D. Neb. 2008). In *Jenkins*, the central issue common to all putative class members was that General Collection

allegedly collected from debtors after the relevant statute of limitations.  *See id.*  The court could not make a single comprehensive ruling on this issue.  *See id.* at 10,11.  Individual inquiries into claimants' financial history were required.  *Id.*  *Jenkins* also necessitated individual review of putative class members' circumstances to determine which statute of limitations applied in each case.  *Id.*

In the present case, the issue that is common to all class members is whether CMS's standardized complaints and discovery documents violate the FDCPA and the NCPA.  Thus, the case at bar is distinguishable from the *Jenkins* case.  Additionally, the magistrate judge's decision to certify class is consistent with this district's previous ruling in *Evans v. Am. Credit Sys., Inc.*, which is more factually similar to the present case than *Jenkins.*  *See Evans v. Am. Credit Sys., Inc.*, 222 F.R.D. 388 (D. Neb. 2004).

Thus the plaintiffs meet both the commonality and the typicality requirements.  The defendants' arguments to the contrary are unpersuasive.  This is especially true considering that the burden on the plaintiff to establish these requirements is "very light" and "fairly easily met."

### 3.  Adequacy of Representation

Rule 23(a)(4) governs adequacy of representation.  The rule provides that a class's named representatives must "fairly and adequately protect the interests of a class."  Fed. R. Civ. P. 23(a)(4).  The goal of the rule is to ensure (1) that the named representatives have common interests with other class members, and (2) that the named representatives vigorously prosecute class interests through qualified counsel.  *Paxton,* 688 F.2d at 562.

The defendants assert that Ms. Powers and the Palmers are not representative of the entire proposed class because they employed counsel to aide them in responding

to CMS's collection complaints and discovery requests.  The defendants contend that these parties cannot claim they were confused by the documents.  FDCPA violations are not based up whether the plaintiffs were subjectively confused or misled, however, but are assessed objectively "through the eyes of an unsophisticated consumer." *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002).

Next, defendants argue that Ms. Powers and the Palmers are not adequate representatives because they incurred no actual damages, yet they are suing for actual damages on behalf of the class.  In *Rosario v. Livaditis*, the Seventh Circuit held that all class members are not required to suffer the same injury as the named classes to maintain a class action, so long as all injuries arose from the defendant's conduct.  *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).  District court rulings in the Eighth Circuit also support this principle.  *See Mund v. EMCC, Inc.*, 259 F.R.D. 180, 186 (D. Minn. 2009) (stating that differences in damages among individual class members do not outweigh the value of common adjudication).  While Ms. Powers and the Palmers never actually paid CMS the alleged debt, they did incur damages by expending their time and resources to hire attorneys to defend themselves against the claims.  They may also be entitled to statutory damages under the FDCPA and the NCPA.  The fact that other putative class members may have different damages is irrelevant, as the damages to all members stemmed from the defendants' standardized conduct.

Finally, the defendants contend that Ms. Powers is not an adequate representative of the class because her primary motivation for filing the lawsuit was the company-wide phone call she received containing her Social Security number.  Ms. Powers clearly states in her deposition, however, that she believed the phone call was a "different situation" than the one at issue in this lawsuit.  Filing No. 89-2 at 36:20.  Ms.

Powers plainly defines the class she is representing as those individuals to whom CMS sent misleading documents. *See id.* at 7:16-23,8:1-3. Similarly, CMS contends that the Palmers were motivated to enter the lawsuit due to the phone call they received. Mr. Palmer, in particular, was very upset by the call. However, he described the class as "a group of people that have, you know, received the same thing." Filing No. 89-4 at 12:19-20. Thus, the collection complaints and discovery requests are critical to the cases of the representative parties. The assertion that their complaints may be motivated in part by phone calls is not relevant.

Consequently, the defendants' arguments disputing adequacy of representation are unpersuasive. In addition, the defendants do not dispute the magistrate judge's finding that the plaintiffs "will vigorously prosecute the interests of the class through qualified counsel" and that the "plaintiffs demonstrated a strong understanding of their case, their responsibilities to the class, and the expectations as class representatives." Filing No. 105 at 12. Thus, the court finds that Ms. Powers and the Palmers adequately represent the putative class members.

### B. Rule 23(b) Requirements

In addition to satisfying all 23(a) requirements, a certified class must fit within one of the three categories discussed in Rule 23(b). Rule 23(b)(3) is the category most applicable to the present case. It states that class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The two 23(b)(3) requirements are often referred to as "predominance"

and "superiority," and both are required to establish a class under this category. *Bryant v. Bonded Accounts Serv./Check Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000).

### 1. Rule 23(b)(3) – Predominance

To establish predominance, the plaintiffs must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). When central issues common to a class are found to predominate, Rule 23(b)(3) is satisfied even if other important issues must be tried separately. *Id.* at 472.

The analysis for predominance is similar to the analysis conducted in the commonality and typicality sections of Rule 23(a). Similar to its commonality and typicality arguments, the defendants provide factors that they believe the court must review for each individual claim. Despite providing these factors, however, the defendants do not dispute that the central issue in this case is whether CMS's standardized documents violate the FDCPA and the NCPA. They do not dispute that a single determination on this issue is applicable to all putative class members. Additionally, a prior ruling in this district established that the question of whether widely distributed form letters violate the FDCPA could constitute a predominant issue in a factually similar case. *See Evans,* 222 F.R.D. at 395.

In addition to its above argument, the defendants assert that "the myriad of subclasses that may exist" defeats predominance. First, the court notes that Rule 23(c)(5) specifically allows for the creation of subclasses where necessary. Second, the defendants do not provide an argument describing how the formation of subclasses

detracts from the significance of the FDCPA and NCPA issues.  Finally, the defendants argue that individual damage calculations will be required for this class action.  Again, there is little analysis as to how this detracts from the significance of the FDCPA and NCPA issues.  Moreover, rulings in other jurisdictions support the contention that differences in damage calculations among putative class members does not defeat a predominance finding.  *See Mund,* 259 F.R.D. at 186.

The courts finds that the issue of whether CMS's standardized practices violated the FDCPA and the NCPA is the most significant issue in this case.  The court also finds that the issue is shared by all putative class members and concludes that the predominance portion of Rule 23(b)(3) is satisfied.

### 2.  Rule 23(b)(3) – Superiority

To establish superiority, the plaintiffs must prove that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Estate of Mahoney,* 204 F.R.D. at 161 (quoting *Valentino,* 97 F.3d at 1234).

The defendants state that CMS has a low net worth.  The defendants argues that this fact precludes a class action because the FDCPA caps total damages at 1% of the defendant's net worth allowing for putative class members to receive only a "nominal" recovery.  However, the FDCPA specifically states that the class action should be considered "without regard to a minimum individual recovery."  15 U.S.C.

§ 1692k(a)(2)(B).  Additionally, the policy consideration behind Rule 23(b)(3) is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

The defendants also argue that the maximum statutory award of $1,000 combined with the attorney fee-shifting features outlined in 15 U.S.C. §§ 1692k(a)(2)(A) & (C) make individual litigation superior to a class action.  This logic is fundamentally flawed.  Very few consumers would risk hiring an attorney for a $1,000 claim knowing that attorney fees would not be paid for if the case were lost.  Additionally, very few attorneys would agree to represent an individual client for a contingency fee in a case with such a small amount in controversy.  For these reasons, the Seventh Circuit Court of Appeals indicated that, because FDCPA claims are "small-stakes cases, a class suit is the best, and perhaps the only, way to proceed." *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000).

Finally, a class action suit is simply the most effective way to resolve this issue while promoting judicial economy.  As the magistrate judge stated, "resolution of the plaintiff's claims through a class action rather than through hundreds or thousands of individual actions seeking damages is the superior approach."  Filing No. 105 at 15.  In addition.  The superiority finding in this case is completely consistent with this court's findings in previous cases with similar fact patterns. *See Evans,* 222 F.R.D. 388.

For these reasons, a class action in this case provides incentives to prosecute despite small individual recoveries.  A class action is also the most effective method of litigating this issue while maintaining judicial economy.  Thus, the court finds that the superiority portion of Rule 23(b)(3) is satisfied.

14

In conclusion, the court finds and agrees with the magistrate judge that the plaintiffs meet all of the required elements described in Fed. R. Civ. P. 23(a) and Rule 23(b)(3).

THEREFORE, IT IS ORDERED:

1. The plaintiffs' motion for class certification (Filing No. 77) is granted.

2.  The magistrate judge's findings and recommendations (Filing No. 105) are adopted in their entirety.

3.  The defendants' objection (Filing No. 107) is denied.

Dated this 12th day of July, 2013.

BY THE COURT:


s/ Joseph F. Bataillon
United States District Judge

15