IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LAURA POWERS, NICHOLE PALMER, and JASON PALMER, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>CREDIT MANAGEMENT SERVICES, INC., DANA K. FRIES, TESSA HERMANSON, JESSICA L. V. PISKORSKI, BRADY W. KEITH, and MICHEAL J. MORLEDGE,<br><br>    Defendants. | **8:11CV436**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on defendants Brady W. Keith's and Micheal J. Morledge's reasserted motion for summary judgment, Filing No. 72; the plaintiffs' reasserted cross-motion for partial summary judgment against defendants Credit Management Services, Inc. ("CMS") and Brady Keith as to one specific allegation—misrepresenting attorney involvement, Filing No. 116;[1] the defendants' reasserted

---

[1] The plaintiffs originally sought a determination, as a matter of law, that CMS and Keith misrepresented the attorney involvement in the underlying county court collection cases against the named plaintiffs, based on Brady Keith's admissions that "despite his name systematically appearing as attorney of record on the signature block on pleadings he actually has no involvement" in the Powers and Palmer state court collection actions. They argued CMS was vicariously liable for Keith's actions. See Filing No. 117, Plaintiffs' Brief at 1-2, 6-7.

The parties filed their summary judgment motions before the interlocutory appeal of the court's class certification order, and reasserted the motions after the Eighth Circuit reversed the class certification and remanded the action. See Filing Nos. 174 & 175, Reassertions of Motions; Filing No. 169, Eighth Circuit Opinion; Powers v. Credit Management Servs., Inc., 776 F.3d 567 (8th Cir. 2015); Filing Nos. 174 & 175, Reassertions of Motions. The parties rely on their original briefing.

After the action was remanded, the plaintiffs filed a second motion for class certification, seeking certification of a class only as to alleged violations in connection with CMS's standard-form complaint. Filing No. 176. They no longer seek class certification with respect to alleged violations based on discovery practices, and, in briefing on the second motion for class certification, the plaintiffs appear to have abandoned their claims based on misrepresentation of attorney involvement, focusing instead on alleged violations presented in the standard-form complaints. Filing No. 177, Plaintiffs' Memorandum at 1 n.1 (noting plaintiffs do not request certification for issues relating to discovery); Filing No. 181, Reply Brief at 13 (noting that class definitions do not involve a breakdown by attorney). In view of the changed

motion for a summary judgment of dismissal on the merits as to all defendants, Filing No. 108, and the plaintiffs' motion for partial summary judgment on liability, Filing No. 130. *See* Filing No. 174 & Filing No. 175.[2] This is a putative class action suit for alleged violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA), and the Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601, *et seq.*[3] As relevant, the plaintiffs challenge CMS's routine practices of representing in CMS's standard-form collection complaint that a claim was presented more than 90 days prior to filing the complaint and of seeking and collecting sums in addition to principal, such attorney fees and prejudgment interest. Essentially, the plaintiffs contend that CMS miscasts its claims to allege a "goods and services" cause of action in order to recover the additional amounts. In the challenged state-court collection complaints, CMS relies on two Nebraska statutes, Neb. Rev. Stat. § 45-104 and Neb.

---

posture of the case, arguments that relate to discovery materials and attorney-misidentification are no longer relevant and will not be addressed. The plaintiffs' motion for partial summary judgment on behalf of the individual named plaintiffs against defendants CMS and Brady Keith (Filing No. 116) will be denied as moot.

Also pending is an objection to the admission of certain evidence, a printout of a third-party website. Filing No. 146. The court did not consider the evidence in connection with this motion and the objection will be denied as moot.

[2] As noted *supra* at n.1, the court will address the reasserted motions as narrowed by the parties' positions on the class-certification issue, and in light of the Eighth Circuit opinion. *See Powers v. Credit Management Servs., Inc.*, 776 F.3d 567 (8th Cir. 2015).

[3] In particular, the plaintiffs allege violations of 15 U.S.C. §1692e (prohibiting false, misleading, or deceptive representations), § 1692e(2)(A) (prohibiting false representation of the character, amount, or legal status of any debt); § 1692e(2)(B) (prohibiting false representation of services rendered or compensation which may lawfully be received by any debt collector for the collection of a debt), § 1692e(5) (prohibiting a "threat to take any action that cannot legally be taken or that is not intended to be taken"), § 1692e(9) (prohibiting "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval"), § 1692e(10) (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"), § 1692f (prohibiting the use of "unfair or unconscionable means to collect or attempt to collect any debt."); and § 1692f(1)(prohibiting "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" (emphasis added)).

Rev. Stat. § 25-1801, to support the collection of prejudgment interest and attorneys' fees.[4] Filing No. 17, Amended Complaint, Ex. A, *Credit Mgmt. Servs., Inc. v. Powers*, Douglas Co. Court Complaint ("Powers collection complaint"); *id.,* Ex. C, *Credit Mgmt. Servs., Inc. v. Palmer*, Douglas Co. Court Complaint ("Palmer collection complaint").

This court earlier certified a class action comprised of debtors who had received standardized collection complaints and standardized discovery materials from CMS.

_____

[4] Those statutes provide:

Unless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing, or on settlement of the account from the day the balance shall be agreed upon, on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof, and on money loaned or due and withheld by unreasonable delay of payment. Unless otherwise agreed or provided by law, each charge with respect to unsettled accounts between parties shall bear interest from the date of billing unless paid within thirty days from the date of billing.

Neb. Rev. Stat. § 45-104.  Under Neb. Rev. Stat. § 25-1801,

Any person, partnership, limited liability company, association, or corporation in this state having a claim which amounts to four thousand dollars or less against any person, partnership, limited liability company, association, or corporation doing business in this state for (1) services rendered, (2) labor done, (3) material furnished, (4) overcharges made and collected, (5) lost or damaged personal property, (6) damage resulting from delay in transmission or transportation, (7) livestock killed or injured in transit, or (8) charges covering articles and service affecting the life and well-being of the debtor which are adjudged by the court to be necessaries of life may present the same to such person, partnership, limited liability company, association, or corporation, or to any agent thereof, for payment in any county where suit may be instituted for the collection of the same. If, at the expiration of ninety days after the presentation of such claim, the same has not been paid or satisfied, he, she, or it may institute suit thereon in the proper court.  If payment is made to the plaintiff by or on behalf of the defendant after the filing of the suit but before judgment is taken, except as otherwise agreed in writing by the plaintiff, the plaintiff shall be entitled to receive the costs of suit whether by voluntary payment or judgment. *If he, she, or it establishes the claim and secures judgment thereon*, he, she, or it shall be entitled to recover the full amount of such judgment and all costs of suit thereon, and, in addition thereto, interest on the amount of the claim at the rate of six percent per annum from the date of presentation thereof, and, if he, she, or it has an attorney employed in the case, an amount for attorney's fees as provided in this section . . .

Neb. Rev. Stat. §  25-1801 (emphasis added).  The statute further provides that if the claimant "fails to recover a judgment in excess of the amount that may have been tendered" by the person liable under the statute, attorney's fees are not recoverable.  *See id.*  Further, attorney's fees are to be assessed by the court and are limited to ten dollars when the judgment is fifty dollars or less and to ten percent of the amount over fifty dollars when the judgment is over fifty dollars up to four thousand dollars.  *Id.*

Filing No. 105, Findings and Recommendations of the Magistrate Judge; Filing No. 150, Memorandum and Order.  On interlocutory appeal, the Eighth Circuit Court of Appeals ("Eighth Circuit") reversed this court's earlier class certification order and remanded for proceedings consistent with its opinion.  *See* Filing No. 169, Eighth Circuit Opinion; *Powers v. Credit Management Services, Inc.*, 776 F.3d 567 (8th Cir. 2015).  The Eighth Circuit found that the standard-form complaint classes, as certified, did "not meet the commonality, predominance, and superiority requirements of Rule 23." *Id.* at 573.  In making that finding, the Eighth Circuit identified "an unresolved common question of law in applying § 45–104," noting that to recover under 15 U.S.C. § 1692f, "a class member must prove that CMS's prayer for an award of interest in the state court collection suit was 'unfair or unconscionable,' not merely unsuccessful." *Id.* at 571.  Similarly, with respect to collection of prejudgment interest and attorney's fees under Neb. Rev. Stat. § 25-1801, the Eighth Circuit again found "the issue as framed appears to present a common question of law—whether § 25-1801 requires that an assignee of the original creditor must personally present the claim at least ninety days before commencing a collection suit." *Id.* at 573.  The court found class certification would be appropriate "only if, as plaintiffs alleged, CMS's standard-form complaints and discovery requests, *on their face*, violated the FDCPA and therefore the NCPA." *Id.* at 570 (emphasis in original).

Defendants Micheal Morledge and Brady Keith (hereinafter "the individual defendants") move for summary judgment with respect to claims against them in their individual capacities.  They assert that they had no direct involvement in the pleadings filed against the named plaintiffs.  Defendant Micheal Morledge also argues that, as an

individual owner, officer, or shareholder of the company, he is not considered a "debt collector," and cannot be held liable for the corporation's actions under the FDCPA or the NCPA.  The plaintiffs oppose the motion, arguing that Keith is indirectly liable for the violations and that Morledge is liable under alter ego or piercing the corporate veil theories.  The plaintiffs also move for summary judgment against defendants CMS and Brady Keith on the issue of attorney involvement.[5]   Both parties move for summary judgment on the merits.  Defendants contend that undisputed evidence shows their conduct does not violate the FDCPA and NCPA whereas the plaintiffs contend the evidence shows that the pleadings at issue violate the FDCPA and the NCPA as a matter of law.

### I. FACTS

The record shows that in the Powers state-court collection action, CMS sought to recover for "goods, services and/or labor" in the amount of $454.00.  Filing No. 17, Amended Complaint at 4, Ex. A, Powers collection complaint at 1.  The collection complaint states that "GIKK ORTHO SPECIALISTS provided goods, services and/or labor to Defendant(s) and/or family members of Defendant(s).  The reasonable value or agreed amount of these services is $454.00 and such is a liquidated amount."  *Id.*  The collection complaint further provides "[p]laintiff requests prejudgment interest of $224.48 from 4/25/2007 to 6/7/11, pursuant to Sec. 45-104 and accruing prejudgment interest and attorney fees, as allowable by law."  *Id.*  Further it states "More than 90 days have elapsed since the presentation of this claim."  *Id.*

---

[5] That motion has been rendered moot due to the changed posture of the case.  *See supra* at 1-2 n.1.

In the Palmer collection complaint, CMS sought recovery of three amounts: $24.51 for goods, services and/or labor of Physicians of Ob/Gyn-Dr. Benjamin Ryder, stating the "reasonable value or agreed amount of these services is $24.51 and such amount is a liquidated amount;" $602.39 for goods, services and/or labor of Physicians of Ob/Gyn-Dr. Mary Kratoska, again stating $602.39 was the reasonable value of the services and the amount was liquidated; and $229.48 for services provided by Physicians of Ob/Gyn-Dr. Nancy Hicks, also stating the amount was reasonable and liquidated.  *Id.*, Amended Complaint, Ex. C, Palmer collection complaint at 1-2.  CMS sought statutory attorney fees and accruing prejudgment interest on each claim under Neb. Rev. Stat. §25-1801.  *Id.* at 1-2.  The Palmer collection complaint also states that "demand for payment was made" on each claim on certain dates and that more than 90 days elapsed since the presentation of the claims.  *Id.*

Undisputed evidence shows that the county court complaints at issue in this case are standard form pleadings used by CMS in-house attorneys on a regular basis, with only the names and amounts changed to suit the individual case.[6]  Filing No. 85-2, Ex. 1A, Deposition of Tessa Hermanson ("Hermanson Dep.") at 52-54.  CMS's policy and practice is to represent in its standard collection complaint that more than 90 days have elapsed since the presentation of the claim for the purpose of availing themselves of attorney's fees pursuant Neb. Rev. Stat. § 25-1801.  Filing No. 79-8, Ex. 4C, Hermanson Dep. at 52-53; Filing No. 109-1, Ex. B, Hermanson Dep. at 60.  In-house counsel Tessa Hermanson testified that CMS does not routinely send a letter by certified mail to consumers prior to filing collection lawsuits.  Filing No. 109-1, Ex. B,

---

[6] Evidence indicates CMS changed the standard language of its form pleadings sometime after the filing of this lawsuit.  Filing No. 109-1, Ex. B, Hermanson Dep. at 56.

Hermanson Dep. at 63.  CMS states in its answer that it relies on the statement sent by the original creditor.  Filing No. 25, Amended Answer at 11; *see also* Filing No. 50-8, Ex. 7, Answers to Requests for Admission at 13; Filing No. 110, Brief at 9 (contending that CMS "is not required to personally present the claim" and stating "CMS has pled that the claim was in fact presented (in this case, by the original creditor) 90 days before filing suit").  CMS in-house counsel Dana Fries testified in her deposition that "if we were proceeding or asking for interest under that Nebraska revised statute [§ 25-1801] that we have to be able to prove that more than 90 days has elapsed between the presentation of the claim and the date that we filed the claim" and that her understanding of "presentation" was when the debtor was presented with the underlying bill.  Filing No. 178-4, Deposition of Dana Fries ("Fries Dep.") at 26; *see also* Filing No. 109-1, Ex. B, Hermanson Dep. at 60.

The record also shows it is CMS's routine practice to seek and collect sums in addition to principal, such as attorney fees and/or interest in their collection lawsuits.  . Filing No. 178-4, Deposition of Dana Fries ("Fries Dep.") at 26.   CMS's complaints are framed as actions for recovery of goods and services and/or labor to fall within the purview of Neb. Rev. Stat. § 25-1801 for purposes of collecting attorney's fees and prejudgment interest.  Filing No. 79-8, Ex. 4C, Hermanson Dep. at 52; Filing No. 85-8, Ex. 2B, Deposition of Brady Keith ("Keith Dep.") at 52-53; *see*, *e.g.*, Filing No. 17, Amended Complaint, Ex. C, Palmer collection complaint.  Fries testified that complaints contain the language that the claim is liquidated in order for defendants to avail themselves of prejudgment interest under § 45-104, and the language regarding presenting a claim in order to be entitled to recover interest and attorney's fees under

Neb. Rev. Stat. § 25-1801. Filing No. 182-3, Ex. 2A, Fries Dep. at 47; Filing No. 50, Ex. 8, Answers to Requests for Admission at 13, Requests Nos. 76-78; Filing No. 79-8, Ex. 4C, Hermanson Dep. at 52-53. Tessa Hermanson testified that in determining the reasonable value or agreed-upon amount of services rendered, CMS relied on the original creditor. Filing No. 109-1, Hermanson Dep. at 57-58. She stated that the interest CMS seeks and/or recovers runs from the date of demand, which is the date the original creditor sent the debtor a bill. *Id.* at 58-60. Dana Fries also stated that "reasonable value" and "presentation of a claim" are determined with reference to information provided by the original creditor. Filing No. 109-1, Ex. A, Fries Dep. at 25-27. She interprets presentation of a claim to be "when [the debtor was] presented with the underlying bill." *Id.* at 26. Hermanson testified that interest and attorneys' fees are collected in cases involving medical bills that are settled prior to obtaining a judgment. *Id.* at 63-64.

CMS in-house counsel Brady Keith testified that the cause of action pled in the Powers collection complaint was based on contract. Filing No. 85-8, Ex. 2B, Keith Dep. at 31. Dana Fries testified the causes of action were "an implied contract of - quasi contract, unjust enrichment type theory" and "[c]ould also be a contract, a written contract theory." Filing No. 109-1, Ex. A, Fries Dep. at 45. Fries also testified that the Powers collection complaint is based on "a contract for services provided" and the Palmer collection complaint is based "on implied contract to services provided, quasi contract theory." *Id.* at 61. CMS's standard-form county court complaints also contain allegations that the amount of the consumer debt is a liquidated amount. Filing No. 132, Ex. 1C, Hermanson Dep. at 62-63.

The undisputed evidence establishes that CMS is a subchapter S corporation in the business of buying and collecting consumer debt. Filing No. 85-3, Ex. 1B, Deposition of Jason Morledge ("J. Morledge Dep.") at 11-12, 14; Filing No. 85-5, Ex. 2A, Deposition of Micheal Morledge ("M. Morledge Dep.") at 17. Collecting debts is its only business. Filing No. 85-3, Ex. 1B, J. Morledge Dep. at 14. CMS always takes an assignment from creditors of claims on which it sues prior to filing a lawsuit. Filing No. 17-5, Amended Complaint, Ex. D, Interrogatories with attached Assignments. CMS is the named plaintiff in all of the county court collection cases it files against consumers. Filing No. 79-12, Ex. 5C, JUSTICE printout.

CMS files approximately 2,500 collection lawsuits per month. Filing No. 85-2, Ex. 1A, Hermanson Dep. at 30. In any given month, approximately 3,800 accounts are being sued on by CMS legal counsel. Filing No. 85-3, Ex. 1B, J. Morledge Dep. at 51. Of approximately 27,815 lawsuits filed in the State of Nebraska from December 17, 2010 and December 18, 2011, CMS approximates that more than 19,000 have been reduced to judgment, either by default, through a confession of judgment, or after a hearing or trial. Filing No. 89-5, Ex. D, Affidavit of Tessa Hermanson at 6. Claims may have been paid in full by defendant consumers, or the parties may have entered into settlement agreements. *Id.* at 7. CMS has collected interest and attorney's fees on collection complaints. *Id.* at 6; Filing No. 109-1, Ex. B, Hermanson Dep. at 65. CMS keeps the attorney fees and interest that it collects and puts the sums recovered in its general account to pay such items as salaries. Filing No. 86, Ex.1C, Bergholz Dep. at 22; Filing No. 109-1, Ex. B, Hermanson Dep. at 65. CMS pays its clients their

percentage of the funds collected by CMS, which totals approximately a million dollars a month.  Filing No. 86, Ex.1C, Bergholz Dep. at 25-26.

Micheal Morledge has been involved in the collection business at CMS from the late 1980's until the present.  Filing No. 85-5, Ex.2A, M. Morledge Dep. (Part 1) at 13. Micheal Morledge is president, secretary, and treasurer of CMS.  *Id.* at 16, 18-24. Micheal Morledge is the only director of CMS, and the only shareholder of CMS.  *Id.* at 17.  He attends meetings with the accountant for CMS at least once a month to discuss profit and loss statements of CMS.  *Id.* at 20-21; Filing No. 85-6, Ex. 2A, M. Morledge Dep. (Part 2) at 50-51.  Micheal Morledge has been in the office at CMS at least 175 days of the last year and has spent that much time in the office every year since 2007. *Id.* at 45-46.  He is paid a salary and a percentage of the profits from the collection work done by CMS.  Filing No. 86, Ex.1C, Bergholz Dep. at 34.

Brady Keith is an attorney who works as in-house counsel for CMS handling debt collection cases.  Filing No. 85-8, Ex. 2B, Keith Dep. at 15.  His primary focus is debt collection.  *Id.*  CMS is his only client.  *Id.*  Keith filed 10,522 Nebraska County Court collection lawsuits in the last two years.  Filing No. 79, Ex. 5F, JUSTICE printout.
Keith's name appears, along with the names of three other CMS attorneys (Dana Fries, Tessa Hermanson, and Jessica Piskorski) in the signature blocks of CMS's standardized collection complaints.  *See, e.g.*, Filing No. 17, Exs. A & C; Filing No. 79-16, Ex. 5G, County Court Complaint; Filing No. 79-18, Ex. 5I, County Court Complaint. It is the standard practice to include all in house counsels' name on the signature block. Filing No. 85-2, Hermanson Dep. at 51-52.  All of the attorneys may work at any time on any file.  Filing No. 97-6, Ex. 2B, Fries Dep. at 35; Filing No. 132, Ex. 1A, Fries Dep. at

35.  Tess Hermanson testified she has no outside law practice and she only works for CMS.  Filing No. 97-3, Hermanson Dep. at 85.

The record also shows the defendants maintain computerized records accounting for all interest charged and collected.  Filing No. 149-3, Ex. 1B, Deposition of Carolyn Wicks ("Wicks Dep.") at 15, 25, 29.  The defendants have not raised a bona-fide error defense in their answer, and expressly disclaim the defense in answers to interrogatories.  Filing No. 178-2, Ex. 2, Defendants' Answers to Interrogatories at 12-13, Responses to requests for Production at 21-22.

## II.  LAW

### A.  Summary judgment

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'"  Torgerson v. City of Rochester, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting Celotex, 477 U.S. at 323).  If the movant does so, "the nonmovant must

respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting *Celotex*, 477 U.S. at 324).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted.  *See id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences.  *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).  "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations."  *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

## B.    FDCPA

Congress enacted the FDCPA in 1977 for the primary purpose of eliminating abusive debt collection practices.  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010); *Dunham v. Portfolio Recovery Associates, LLC*, 663 F.3d 997, 1000 (8th Cir. 2011).  The FDCPA is a remedial, strict liability statute that should be applied liberally.[7]  *Picht v. Hawks*, 77 F.Supp.2d. 1041, 1043 (D. Minn. 1999),

---

[7] Although the FDCPA is a strict liability statute, "it excepts from liability those debt collectors who satisfy the 'narrow' bona fide error defense."  *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).  The Supreme Court recently concluded that a debt collector could not

*aff'd* 236 F.3d 446 (8th Cir. 2001); *see also Hage v. Gen. Serv. Bureau, Inc.,* 306 F. Supp. 2d 883, 888 (D. Neb. 2003).

An attorney qualifies as a "debt collector" under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (recognizing that law firms may qualify as debt collectors for purposes of the FDCPA and lawyers do not get a "pass" on the FDCPA merely because they hold a law license); *see* 15 U.S.C. § 1692a(6); *Crossley v. Lieberman*, 868 F.2d 566, 569-70 (3d Cir. 1989) (noting that the Act was amended in 1986 to include attorney debt collectors).[8] The FDCPA "applies to the litigating activities of lawyers." *Heintz*, 514 U.S. at 294, and "imposes some constraints on a lawyer's advocacy." *Jerman,* 559 U.S. at 600. In fact, attorney debt collectors warrant close scrutiny. *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 301 (3rd Cir. 2008).

The Eighth Circuit has adopted a "case-by-case" approach when "applying the statute's prohibitions to attorneys engaged in litigation." *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012) (noting the FDCPA has an apparent objective of preserving creditors' judicial remedies). Numerous courts have concluded that the FDCPA applies to pleadings filed in state court actions. *See, e.g., Miller v. Wolpoff & Abramson,* 321 F.3d 292, 298 (2d Cir. 2003) (involving verified complaint filed in state court); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (finding § 1692e(2) and (10) violations where debt collector's "allegation in its state court complaint . . . gave a false impression as to the legal status it enjoyed");

---

assert a mistake-of-law defense under the bona fide error provision of the FDCPA. *Jerman*, 130 S. Ct. at 1624. As noted above, the bona-fide error defense is not at issue in this case.

[8] As initially enacted, the FDCPA exempted "any attorney-at-law collecting a debt . . . in the name of a client" from the statutory definition of debt collector. Pub. L. 95–109, § 803(6)(F), 91 Stat. 874, 875 (1977). In 1986, reacting to the explosion of law firms conducting debt collection businesses, Congress repealed the exemption. Pub. L. 99–361, 100 Stat. 768; *see* H.R. Rep. 99–405, reprinted in 1986 U.S.C.C.A.N. 1752.

*Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007) (subjecting interrogatories and summary judgment motions to the FDCPA and noting that "[t]he amendment by its terms in fact suggests that all litigation activities, including formal pleadings are subject to the FDCPA, except to the limited extent that Congress exempted formal pleadings from the particular requirements of § 1692e(11) [that all communications state that they come from a debt collector]"); *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013) ("[T]he FDCPA 'applies to the litigating activities of lawyers,' which, as other circuits have held, may include the service upon a debtor of a complaint to facilitate debt collection efforts. . . .") (quoting *Heintz*, 514 U.S. at 294); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1032 (9th Cir. 2010) ("To limit the litigation activities that may form the basis of FDCPA liability to exclude complaints served personally on consumers to facilitate debt collection, the very act that formally commences such a litigation, would require a nonsensical narrowing of the common understanding of the word 'litigation' that we decline to adopt."); *Glover v. F.D.I.C.*, 698 F.3d 139, 152 n. 8 (3d Cir. 2012) (extending the FDCPA to state court complaints, explaining that the law firm, in filing a foreclosure complaint against a debtor, indisputably met the definition of "debt collector" under the FDCPA); *see also Jerman,* 559 U.S. at 580 (2010) (deciding the scope of the FDCPA's bona fide error defense on the basis of a notice attached to mortgage foreclosure complaint).  Filing complaints, liens, and other court pleadings can also be a threat under the FDCPA to take an action that cannot legally be taken within the meaning of § 1692e(5).  *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) (noting that attempts and threats are not necessarily mutually exclusive concepts).

"The FDCPA governs debt collection in or out of court; it does not allow debt collectors to use litigation as a vehicle for abusive and unfair practices that the Act forbids." *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 451 (6th Cir. 2014), *as amended* (Dec. 11, 2014) (acknowledging "the reality of the debt collection business, where 'some debt collectors have foregone all meaningful attempts to communicate with debtors and have instead opted to file lawsuits against debtors en masse in an effort to collect enforceable default judgments'") (quoting Matthew R. Bremner, *The Need for Reform in the Age of Financial Chaos, 76 Brook. L. Rev. 1553, 1587 (2011)*); *see also Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1256 (11th Cir. 2014) ("A deluge has swept through U.S. bankruptcy courts of late. Consumer debt buyers . . . are filing proofs of claim on debts deemed unenforceable under state statutes of limitations."); *Kaymark v. Bank of America*, 783 F.3d 168, 179 (2015) (concluding in a putative class action "that the fact that the debt collection activity at issue here involves a foreclosure complaint, rather than a debt collection letter, does not remove it from the FDCPA's purview").

Under the FDCPA, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  A misleading representation of state law is an FDCPA violation under 15 U.S.C. § 1692e. *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000).  "The false representation of . . . the character, amount, or legal status of any debt" is also barred. 15 U.S.C. § 1692e(2)(A).  If a debt collector does not have the right to collect interest on a debtor's debt, an allegation to the contrary is a "false representation" of the "character" and "amount" of the debt under § 1692e(2). *Stratton,* 770 F.3d at 451.  Similarly, a

statement in a collection letter requiring payment of a $100 civil penalty as part of the amount debtors could pay to satisfy the debt without proceeding to court under a state statute that requires a collector to settle for court costs and a $20 service charge under such circumstances is a misleading representation of state law in violation of 15 U.S.C. § 1592e.  *Duffy*, 215 F.3d at 874.   A statement in a collection letter that proposes settlement for an amount that includes reasonable attorney's fees when it is clear under state law that attorney's fees cannot be recovered is "a threat to take an 'action that cannot legally be taken' under [state] law," in violation of 15 U.S.C. § 1692e(5).  *Id.*  An allegation in a state court complaint that a debt collector is "subrogated" to a creditor's rights when in fact it is not, gives a false impression as to the legal status the debt collector enjoyed and is a false representation in an attempt to collect the debt, in violation of 15 U.S.C. § 1692e(2) and (10).  *Gearing,* 233 F.3d at 472.

In evaluating whether a debt collection letter is false, misleading, or deceptive in violation of § 1692e, the letter must be viewed through the eyes of an unsophisticated consumer.  *Duffy,* 215 F.3d at 873; *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002).  The unsophisticated-consumer standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.'"  *Duffy*, 215 F.3d at 874 (quoting *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997)); *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004); *see also Gionis v. Javitch, Block, Rathbone*, LLP, 238 F. App'x 24, 29 (6th Cir. 2007) (noting with respect to a statement of entitlement to attorney's fees in an affidavit of indebtedness attached to a state-court complaint that "[n]o semantical recasting alters the intimidating

effect on the least sophisticated consumer: that she 'would be confused, and reasonably might feel pressured to immediately pay the debt, even if she disputed its validity, in order to avoid the possibility of having to also pay [the debt collector's] attorney fees at some later date'")(citation omitted)).[9]

Using "unfair or unconscionable means to collect or attempt to collect any debt" is also prohibited. 15 U.S.C. § 1692f.  Under § 1692f, prohibited "unfair" actions include, but are not limited to, debt collection practices set out in several listed examples.  Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50, 097, 50,107-08 (Fed. Trade Comm'n 1988), *available at* 1988 WL 269068 (Dec. 13, 1988).  One listed example of an unfair or unconscionable action under that provision is "[t]he collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation)" unless "authorized by the agreement or permitted by law."[10]  15 U.S.C. § 1692f(1); *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002); Staff Commentary, 53 Fed. Reg. at 50,107–08 ("[f]or purposes of [section 1692f], 'amount' includes not only the debt, but also any incidental charges, such as collection charges, interest, service

_____

[9] However, the unsophisticated consumer standard is "inappropriate for judging communications with lawyers."  *Powers,* 776 F.3d at 574 (quoting *Evory v. RJM Acquisitions Funding, LLC,* 505 F.3d 769, 774 (7th Cir. 2007)).  "Rather, 'a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable.'"  *Id.* (quoting *Evory,* 505 F.3d at 775).  Pleadings directed to attorneys or to represented debtors are no longer at issue in this case. By virtue of the second motion for class certification, the issues are limited to violations that appear on the face of county-court collection complaints, which are the initial pleadings in an action and are served on individuals prior to any appearance of counsel.

[10] Other actions that courts have determined to be potentially "unfair" under § 1692f include attaching law-firm generated documents resembling credit card statements to a state collection complaint, *Hartman v. Great Seneca Fin. Corp.,* 569 F.3d 606, 610, 614 (6th Cir. 2009); sending a collection letter that questioned the debtor's honesty and good intentions, *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 765 (7th Cir. 2006); filing for a writ of garnishment against a debtor who was current in payments, *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1517 (9th Cir. 1994); collecting 33% of a debt balance as a collection fee, *Bradley v. Franklin Collection Serv.,* 739 F.3d 606, 610 (11th Cir. 2014); and filing an invalid judgment lien, *Currier,* 762 F.3d at 534.

charges, late fees, and bad check handling charges."). Letters seeking slightly overstated interest charges are "an attempt to collect interest not permitted by law, and therefore a violation of the plain language of section 1692f(1)." *Duffy*, 215 F.3d at 875. "[A]lthough in some cases 'the simple request for costs in an unstated amount, where such costs are permitted by state law . . . is not a false representation and does not violate' the FDCPA, this is true not because there is a special rule for requests but because the implied representation is accurate." *Stratton*, 770 F.3d at 451; *see Clark v. Main Street Acquisition Corp.*, 553 Fed. Appx. 510, 514–15 (6th Cir. 2014) ("[b]y alleging in a complaint that a consumer owes interest that had in fact been waived, a debt collector may be able to secure a default judgment for an amount the consumer does not actually owe").

The dispositive question under § 1692f(1) is thus whether the additional sums collected by a debt collector in a state court action is "permitted by law." *See, e.g., Miller,* 321 F.3d at 307–308.  The court looks to Nebraska law to determine whether collection of additional amounts is permissible.  *See, e.g., Freyermuth v. Credit Bureau Serv.*, 248 F.3d 767, 770 (8th Cir. 2001).  This determination is an issue of statutory interpretation and is thus a matter of law for resolution by the court.  *See Johnson,* 305 F.3d at 1119.  An amount is "permitted by law" within the meaning of the FDCPA if state supreme court holdings establish that collection of the amount is lawful.  *Id.; see also McCollough v. Johnson, Rodenburg & Lauinger, LLC* 637 F.3d 939, 949-950 (9th Cir. 2011) (holding that a debt collection law firm violated the FDCPA by requesting attorney fees in its state court complaint where it did not present any admissible evidence establishing its entitlement to collect fees at the time of the summary judgment motion

18

or to establish express authorization of its fee request from the debtor.). The Eighth Circuit has not addressed the issue of whether silence of the law constitutes permission in the context of collection of amounts "permitted by law," but two other circuits have interpreted § 1692f(1) of the FDCPA to mean that, when state law does not affirmatively authorize or prohibit service charges, a service charge may only be imposed if the customer expressly agreed to it in the contract which gives rise to the debt.  *See Police v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 407–08 (3d Cir. 2000); *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999); *see also Hage*, 306 F. Supp. 2d at 887.

The FDCPA utilizes the principle of respondeat superior liability. *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000); *Wadlington v. Credit Acceptance Corp.* 76 F.3d 103, 108 (6th Cir. 1996); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994).[11]  "The debt collection company answers for its employees' violations of the statute."  *Pettit*, 211 F.3d at 1059 (stating that "[w]ith vicarious or respondeat superior liability, the debt collection company 'and its managers have the proper incentives to adequately discipline wayward employees, as well as to instruct and train employees to avoid actions that might impose liability'" (quoting *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995)).

---

[11] To be liable under the FDCPA, a defendant must qualify as a "debt collector," defined as "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  The Staff Commentary on the FDCPA explains that this definition includes "[e]mployees of a debt collection business, including a corporation, partnership, or other entity whose business is the collection of debts owed another."  Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50, 101, 50,102 (Fed. Trade Comm'n Dec. 13, 1988).

Personal liability can be imposed under the FDCPA either under the theory of personal involvement in the conduct or by piercing corporate veil. *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 436-38 (6th Cir. 2008) (describing split of authority in Federal circuit and district courts on whether directors, shareholders, etc., can be held liable as "debt collectors" within the meaning of the FDCPA); *see Pettit*, 211 F.3d at 1058-59 (officers or shareholders "do not become 'debt collectors' simply by working for or owning stock in debt collection companies, . . . the Act does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced."); *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (holding that shareholders of debt collectors are only personally liable if some basis for corporate veil piercing is shown).[12]

## C.    Nebraska Law

---

[12] Most district courts that have addressed the issue have held that the corporate structure does not insulate shareholders, officers, or directors from personal liability under the FDCPA. *See, e.g., del Campo v. Kennedy*, 491 F. Supp. 2d 891, 903 (N.D. Cal. 2006); *Brumbelow v. Law Offices of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 618–21 (D. Utah 2005); *Albanese v. Portnoff Law Assocs., Ltd.*, 301 F.Supp.2d 389, 400 (E.D. Pa. 2004); *Musso v. Seiders*, 194 F.R.D. 43, 46–47 (D. Conn. 1999); *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 861–62 (D. Ariz.1999); *Pikes v. Riddle*, 38 F. Supp. 2d 639, 640 (N.D. Ill. 1998); *Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1337–38 (D. Utah 1997); *Newman v. Checkrite Cal., Inc.*, 912 F. Supp. 1354, 1372 (E.D. Cal.1995); *Teng v. Metro. Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y.1994). An individual can be found personally liable if the individual 1) materially participated in collecting the debt at issue; 2) "exercise[d] control over the affairs of [the] business, *Piper v. Portnoff Law Assocs.*, 274 F.Supp.2d at 689–90; 3) was "personally involved in the collection of the debt at issue," or 4) "was 'regularly engaged, directly and indirectly, in the collection of debts.' " *See del Campo* 491 F. Supp. 2d at 903 (material participation); *Brink v. First Credit Res.*, 57 F.Supp.2d 848, 862 (D. Ariz. 1999) (same); *Musso*, 194 F.R.D. at 46 (D. Conn. 1999) (personal involvement); *see also Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1073 (E.D. Cal. 2008) (imposing personal liability where the collection activities of the company were its sole source of income, and the only profit-generating activity the president and director oversaw was collecting debts—while the president did not draft the form collection letters the company used, he was one of only three individuals that had final authority over the company's collection procedures).

As a general proposition, Nebraska follows the "American Rule" that attorney fees may be recovered only when authorized by statute or when a recognized and accepted uniform course of procedure allows recovery of an attorney fee. *Sid Dillon Chevrolet–Oldsmobile–Pontiac, Inc. v. Sullivan*, 559 N.W.2d 740, 748 (Neb. 1997); *Eikmeier v. City of Omaha*, 783 N.W.2d 795, 797-98 (Neb. 2010) ("A party may recover attorney fees and expenses in a civil action only when a statute permits recovery or when the Nebraska Supreme Court has recognized and accepted a uniform course of procedure for allowing attorney fees."). Nebraska law does not authorize collection of interest or attorney fees absent a judgment. *Ehlers v. Campbell*, 66 N.W.2d 585, 588 (1954); *see Hage*, 306 F. Supp. 2d at 887-88 (finding as a matter of law that Neb. Rev. Stat. § 25–1801 does not permit collection of amounts in excess of the debt without first obtaining a judgment and that the practice of collecting prejudgment interest and attorneys' fees in reliance on the statutory grant contained in Neb. Rev. Stat. § 25–1801 is a violation of the FDCPA). By its terms, the statutory grant contained in Neb. Rev. Stat. § 25–1801 provides for recovery of attorney fees and interest if the claimant "establishes the claim and secures judgment thereon." Neb. Rev. Stat. § 25–1801; *see Hage*, 306 F. Supp. 2d at 888.

This court has also rejected the argument that a debt collector is entitled to collect interest by virtue of Neb. Rev. Stat. § 45–104. *Hage*, 306 F. Supp. 2d at 887-88. To collect prejudgment interest, a claimant must comply with the provisions of either Neb. Rev. Stat. § 45–103.02(2) (for liquidated claims) or Neb. Rev. Stat § 45–103.02(1) (for unliquidated claims). *Id.*; *Eikmeier*, 783 N.W.2d at 779. "Generally, prejudgment interest accrues on the unpaid balance of liquidated claims *arising from an instrument in*

*writing* from the date the cause of action arose until the entry of judgment, pursuant to Neb. Rev. Stat. §§ 45-103.02(2) (Reissue 2004) and 45-104." *Hage*, 306 F. Supp. 2d at 888; *see, e.g., Duffy,* 215 F.3d at 873–75 (finding a misleading misrepresentation of Minnesota law in collection of costs, attorney fees and penalties); *Kojetin v. C U Recovery, Inc.*, 212 F.3d 1318 (8th Cir. 2000) (per curiam).

"The generally accepted rule is that, in the absence of agreement to the contrary, liquidated demands bear interest whereas unliquidated demands do not." *Frank McGill, Inc. v. Nucor Corp.*, 195 Neb. 448, 455 (1976). Prejudgment interest under § 45-103.02 is recoverable only when the claim is liquidated, that is, when there is no reasonable controversy as to either the plaintiff's right to recover or the amount of such recovery. *Travelers Indemnity Co. v. International Nutrition*, 734 N.W.2d 719 (Neb. 2007). A two-pronged inquiry is required to determine whether a claim is liquidated. *Id.* There must be no dispute either as to the amount due or as to the plaintiff's right to recover. *Id.; see A.G.A. Inc. v. First Nat. Bank, Holdredge, Nebraska*, 474 N.W.2d 655, 658 (Neb. 1991). The amount of a claim is liquidated, for purposes of determining entitlement to prejudgment interest, only when the evidence furnishes a basis to compute an exact amount determinable without opinion or discretion inherent in the factfinding process. *In re Gilbert M. Gibreal Residuary Trust*, No. A-10-1169, 2011 WL 6090241, *15 (Neb. Ct. App. Dec. 6, 2011); *Lange Indus. v. Hallam Grain Co.*, 507 N.W.2d 465 (1993).

Under Nebraska law, the assignee of a chose in action is the proper party and only party who can maintain the suit thereon. *Eli's Inc. v. Lemen*, 256 Neb. 515, 591 N.W.2d 543, 552 (1999). "The purpose of the inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the

relief to be granted." *Id.* The issues in a case are framed by the pleadings. *Rush v. Wilder*, 644 N.W.2d 151 (2002). The essential character of an action and relief sought, whether legal or equitable, is determinable from its main object, as disclosed by the pleadings. *Scherbak v. Kissler*, 510 N.W.2d 318 (1994).

An action to collect on a past due amount for services is properly characterized as an action on an account. *Thomas & Thomas Court Reporters, L.L.C. v. Switzer*, 810 N.W.2d 677, 686 (Neb. 2012); *see, generally, Sodoro, Daly v. Kramer*, 679 N.W.2d 213, 975 (Neb. 2004). "'An action based on quantum meruit for labor and materials furnished is grounded upon an implied promise to pay the reasonable value thereof.'" *Hancock v. Parks*, 110 N.W.2d 69, 74 (Neb. 1961) (quoting *Bosle v. Luebs*, 98 N.W.2d 795, 796 (Neb. 1959). "'[A]n action on account or open account is appropriate where the parties have conducted a series of transactions for which a balance remains.'" *Sodoro, Daly & Sodoro, P.C.*, 679 N.W.2d at 219 (quoting *Pipe & Piling Supplies v. Betterman & Katelman*, 596 N.W.2d 24, 30-31 (Neb. Ct. App. 1999); *Thomas & Thomas Court Reporters, L.L.C.,* 810 N.W.2d at 686 (noting that if a single claim for an amount exceeding $4,000 is involved, § 25–1801 is inapplicable). A theory of recovery under quantum meruit is distinct from an open accounts theory of recovery and must be pleaded separately. *American. Title, Inc. v. Genisys Fin. Corp.*, No. 8:03 CV 463, 2005 WL 2388038, at *3 (D. Neb. Sept. 28, 2005). Misrepresenting the nature of a debtor's debts as debts for materials or services rendered, rather than actions on accounts, in order to deceive state courts and debtors and collect impermissible fees and prejudgment interest is a violation of the FDCPA. *Jenkins v. General Collection Co.,* 538 F.Supp.2d 1165, 1174 (D. Neb. 2008).

Section 45-104 provides the interest rate for prejudgment interest upon the happening of events outlined in the statute. *BSB Constr. v. Pinnacle Bank*, 776 N.W.2d 188 (2009). Prejudgment interest is part of the judgment. *Valley Cnty. Sch. Dist. 88-0005 v. Ericson State Bank*, 790 N.W.2d 462, 18 Neb. App. 624, 631 (Neb. Ct. App. 2010); *see Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989); *Pipe & Piling Supplies v. Betterman & Katelman*, 596 N.W.2d at 30-31. Section 45–104 applies to four types of judgments: (1) money due on any instrument in writing; (2) settlement of the account from the day the balance shall be agreed upon; (3) money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof; and (4) money loaned or due and withheld by unreasonable delay of payment. *Fitzgerald v. Cmty. Redevelopment Corp.*, 283 Neb. 428, 462 (2012). An action based on quantum meruit is not a suit upon an account at all and § 45-104 has no application thereto. *Umberger v. Sankey*, 50 N.W.2d 346, 348 (Neb. 1951).

Under Neb. Rev. Stat. § 25-1801, "a claimant with a claim amounting to less than $4,000 for, among other things, services rendered, may present that claim to the allegedly liable party and then, if the claim is not paid within 90 days, sue for the amount of the original claim and additional costs, interest, and attorney fees." *Thomas & Thomas Court Reporters, L.L.C. v. Switzer*, 810 N.W.2d 677, 686 (Neb. 2012). To recover under § 25-1801, the claimant must plead and prove presentment of the claim after performance and ninety days prior to commencement of the action. *Guaranteed Foods of Nebraska, Inc. v. Ris*on, 207 Neb. 400, 411 (1980) (holding that a party must plead and prove conditions precedent to be entitled to an allowance of an attorney fee under the 25-1801); *Andrews Elec., Co. v. Farm Automation, Inc.,* 198 N.W.2d 463, 465

(Neb. 1972) ("Compliance with the condition is mandatory."); *Umberger,* 50 N.W.2d at 348.  However, Neb. Rev. Stat. § 25-1801 "does not permit collection of amounts in excess of the debt without first obtaining a judgment."   *Hage,* 306 F.Supp.2d at 887-88. By its terms, the statute limits recovery of prejudgment interest and attorney's fees to a claimant who has "establish[ed] his claim and secure[d] judgment thereon." Neb. Rev. Stat. § 25-1801; *see Hage*, 306 F. Supp. 2d at 887-88.

In order to pierce the veil under Nebraska law, courts must consider four relevant factors:  "(1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere façade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity." *Christian v. Smith*, 759 N.W.2d 447, 462 (Neb. 2008).

### D.    NCPA

Under the NCPA (Neb. Rev. St. §§ 59-1601, *et seq.*), "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."  *See Moore v. Eggers Consulting Co.,* 562 N.W.2d 534, 541 (1997).  The NCPA provides a cause of action to "[a]ny person who is injured in his or her business or property" resulting from a violation.  Neb. Rev. St. § 59-1609.  Like the FDCPA, the NCPA is a remedial consumer protection statute that is to be liberally construed.  *See Kuntzelman v. Avco Fin. Serv. of Neb., Inc.*, 291 N.W.2d 705, 707 (1980).  Under Neb. Rev. Stat. §59-1609, each class member is entitled to an amount of statutory damages up to $1,000.00, which does not consider the defendants' net worth.

### III.    DISCUSSION

#### A.    Individual Defendants Micheal Morledge's and Brady Keith's Motion for Summary Judgment (Filing No. 72, reasserted in Filing No. 174)

The court finds defendants Micheal Morledge and Brady Keith have not shown they are entitled to a summary judgment of dismissal.  The evidence shows both individual defendants were sufficiently involved in either drafting pleadings at issue or in creating, supervising, and/or approving procedures used in CMS's day-to-day business of debt collection.  There is evidence that defendant Micheal Morledge remains active in the running of the company.   Although defendant Keith did not personally sign the state court collection complaints served on the named plaintiffs, the action has contemporaneously been certified as a class action and the evidence shows Keith signed complaints directed to members of the putative class.  Moreover, though one attorney may have drafted and signed the complaint, the evidence shows that any of the four attorney defendants could work on any file at any time.  There appears to be no dispute that the debt collecting activities of CMS's in-house counsel were undertaken in the course and scope of their employment at CMS and in conformity with the company's established procedures.  Any alleged liability by CMS employees would be imputed to the company under established agency principals, so the personal liability of the defendant attorneys is not at issue.[13]

---

[13] The Eighth Circuit's concern that a class action would not be superior to a "smaller class limited to collection suits in which an individual defendant participated," because the smaller class "would hold out the prospect of higher recoveries for those with the strongest claims," *Powers*, 776 F.3d at 572, is no longer of import since the plaintiffs have abandoned the discovery-related allegations and the class proposed in the plaintiffs' second motion for class certification only includes debtors who were sent form complaints that list all of CMS's in-house counsel under the signature line.  *See* Filing No. 17, Amended Complaint, Exs. A and C.

The court finds it premature at this time to address the plaintiffs' alter-ego or piercing-the-corporate-veil arguments.  At this juncture, the plaintiffs have not sustained their burden of showing as a matter of law that the corporate entity must be disregarded to prevent injustice or fraud.  The issue can be revisited in connection with damages.

**B.    Plaintiffs' Motion For Partial Summary Judgment Against Defendants Brady Keith And Credit Management Services, Inc. (Filing No. 116, reasserted in Filing No. 175)**

In moving for class certification only on the claims related to the standard form complaints, the plaintiffs have abandoned their position that the named plaintiffs are entitled to a judgment of liability against CMS and Brady Keith based on the alleged misrepresentation of attorney involvement.  The evidence establishing that all of CMS's attorneys may work on any of the cases renders the contention irrelevant in any event.  As noted *supra* at 1-2 n.1, the plaintiffs' motion will be denied as moot.

**C.    The Defendants' Motion for Summary Judgment (Filing No. 108, reasserted in Filing No. 174) and the Plaintiffs' Motion for Partial Summary Judgment on Liability (Filing No. 130, reasserted in Filing No. 175)**

The court finds the plaintiffs' motion for partial summary judgment on liability should be granted and the defendants' cross-motion should correspondingly be denied.  The plaintiffs have shown they are entitled to judgment as a matter of law on the issue of liability for FDCPA and NCPA violations in connection with allegations of entitlement to attorney's fees and prejudgment interest in CMS's standard-form complaints.  The court finds that CMS's standard-form collection complaints violate the FDCPA, and therefore the NCPA, on the faces of the collection court complaints.

It has been clear since this court's decision in *Hage*, 306 F. Supp. 2d at 888, in 2003 that a debt collector violates the FDCPA when it collects either prejudgment interest or attorney's fees without first obtaining a judgment.  *Id.* (stating "[t]he court finds as a matter of law that Neb. Rev. Stat. § 25–1801 does not permit collection of amounts in excess of the debt without first obtaining a judgment").  The court finds as a matter of law that the allegations of the standard-form complaints at issue are misleading because they suggest to an unsophisticated consumer that the debt collector has a right to recover prejudgment interest and attorney's fees without securing a judgment.

The evidence shows that CMS in fact recovered such amounts from debtors without securing a judgment by means of voluntary payments or settlements.  Such settlements would amount to contracts of adhesion if they were entered into in reliance on the misleading allegation.  *See id.* at 889 (noting that the argument that payment for the additional amounts is permissible when tendered as part of a settlement of the county court collection actions "invites analysis similar to that involved in the resolution of the ultimate issue in this case; whether the settlement agreements are unfair and unconscionable as contracts of adhesion").  Under Nebraska law, because CMS does not have the right to collect interest on the debts absent a judgment, allegations suggesting the contrary are "false representations" of the "character" and "amount" of the debts.  CMS's standard form state court complaints amount to "attempts" to collect "amounts" that are neither "expressly authorized" by any agreement in the record nor "permitted by law," in violation of 1692(f).  The court finds CMS's collection of unauthorized interest and fees also violates § 1692e(2), which prohibits "[t]he false

representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  *See* 15 U.S.C. § 1692e(2)(A) & (B).

From the perspective of the least sophisticated consumer, CMS's form pleadings also constitute a "threat" by CMS to take an "action that cannot legally be taken"— namely, to recover prejudgment interest and/or attorney's fees, in violation of § 1692e(5).  CMS's routine practice of misstating the nature of the cause of action as an action on a contract for goods and services in some instances, and as an action on a written contract in others, is also suspect and misleading.

Under Nebraska law, an alleged debt for services provided does not come within the purview of Neb. Rev. Stat. § 45-104, and collection of interest in reliance on that statute is a false representation of the legal status or character of the debt. Prejudgment interest can be collected under that statutory provision only in an action that is based on a written contract that involves a liquidated amount.  *See Hage*, 306 F. Supp. 2d at 888 (rejecting argument that a debt collector was entitled to collect interest by virtue of Neb. Rev. Stat. § 45-104).  The record shows that CMS attorneys equate the term "liquidated amount" or "agreed amount" to mean the amount billed by the original creditor and they rely on the original creditor to determine that amount. Especially in the case of medical billing, amounts billed are generally neither liquidated or agreed-upon, depending on insurance and/or provider agreements, etc.  In many, if not most, cases, a consumer's ultimate responsibility for payment is not the amount initially billed but an amount ultimately settled upon by the provider and third party payor.  It is misleading to the least sophisticated consumer to imply that the debt is

liquidated and there can be no dispute or question as to the reasonable value of medical services.

CMS's standard-form complaints falsely represent the character and amount of the named plaintiffs' debts.  Its request for statutory interest under Neb. Rev. Stat. § 25-1801, without the proviso that such interest can only be recovered in the event it secures a judgment, and without any clear indication that the requirements of the attorney fee statute had been met, mischaracterize the nature and amount of the debt and give the false impression that CMS was legally entitled to recover attorney's fees and prejudgment interest.  Its references to recovery under Neb. Rev. Stat. § 45-104 mischaracterize the action as one based on a written contract.  In Nebraska, County Court jurisdiction over a claim on an account is provided by Neb. Rev. Stat. § 25-1801, and it is misleading and/or deceptive to premise the claim on a written contract without providing a copy of the contract.  Under these facts, the least sophisticated consumer reasonably might feel pressured to immediately pay the debt, even if he or she disputed its validity, in order to avoid the possibility of having to also pay the debt collector's attorney fees and prejudgment interest at some later date, or feel pressured to pay an amount in settlement that was artificially inflated by virtue of the requests for attorney's fees and prejudgment interest.  By alleging in a complaint that a consumer owes interest that in fact is not owed, a debt collector may be able to secure a default judgment or negotiate a settlement for an amount the consumer does not actually owe.

With respect to the plaintiff's claim that CMS's representation in its state court collection complaints that a claim had been presented more than 90 days prior to the filing of the complaint is misleading, the court first finds as a matter of law that from the

perspective of the least sophisticated consumer, the representation implies that the demand for payment had been presented *by the plaintiff* in the collection action. The least sophisticated consumer would assume that CMS, the plaintiff in the action, would be the party that has the claim and is the entity that must present the demand. Under Nebraska law, strict compliance with the prerequisite of making a demand is required in order to fall within the purview of Neb. Rev. Stat. § 25-1801.

In its Amended Answer, CMS relies on the contention that it "did not allege in the underlying collection complaint that CMS individually sent bills/demand letters," but rather alleges that "CMS's clients sent bills and/or letters more than ninety days before those debts were assigned to CMS." *See* Filing No. 25, Amended Answer at 11. However, nothing in the state-court collection complaints at issue indicates that the demand had been made by the original creditor. The collection complaint indicates only that the defendant "is indebted to Plaintiff [CMS] for the following assigned account(s)," followed by the name of a doctor, that "a demand for payment was made" on a certain date, and that "[m]ore than 90 days have elapsed since the presentation of this claim." Filing No. 17, Amended Complaint, Ex. C, Palmer Complaint at 1-2. The court finds the least sophisticated consumer would be reasonably confused by the interchangeable use of the terms "demand for payment" and "claim" in connection with the "presentment," as well as by the cursory reference to "assigned account(s)," without any mention of the nature of the goods or services provided or the dates on which they were provided. Without any special knowledge of the law, a layperson could not figure out, on the face of the collection complaint, what the claim was for or to whom he or she was indebted,

much less comprehend his or her alleged liability for prejudgment interest, costs, or attorney's fees.

There is some evidence in the record to indicate that CMS may send pre-suit form letters to some debtors before filing suit via a third party mail service. *See* Hermanson Dep. at 26, 38-39; Deposition of Janis Garrett at 24-27. That fact is of no consequence, however, because the record shows that CMS does not rely on the date of that letter to trigger the prejudgment interest, rather, it relies on the original creditor's bill or statement as the operative claim or demand. Any issues as to whether, when, or how many pre-suit letters CMS sends does not create a genuine issue of material fact that would preclude summary judgment. Accordingly,

**IT IS ORDERED**:

1.  Defendants Micheal Morledge's and Brady Keith's motion for a summary judgment of dismissal (Filing No. 72, reasserted in Filing No. 174) is denied.

2.  Plaintiffs' Motion for Partial Summary Judgment against defendants Brady Keith and Credit Management Services, Inc. (Filing No. 116, reasserted in Filing No. 175) is denied as moot.

3.  The defendants' Motion for Summary Judgment (Filing No. 108, reasserted in Filing No. 174) is denied.

4.  The Plaintiffs' Motion for Partial Summary Judgment on Liability (Filing No. 130, reasserted in Filing No. 175) is granted with respect to false, misleading, and deceptive representations of the character and amount of the debts and collection of unauthorized amounts and denied with respect to alleged misleading representations relating to demand letters, as set forth in this Memorandum and Order.

5.    The defendants' objection to the admission of evidence (Filing No. 146) is overruled as moot.

6.    Within seven (7) days of the date of this order, the parties shall contact the chambers of United States Magistrate Judge Thomas D. Thalken to schedule a telephone conference to discuss further progression of this case.

Dated this 2nd day of February, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge