IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LAURA POWERS, on behalf of herself and all others similarly situated; NICHOLE PALMER, JASON PALMER,<br><br>Plaintiffs,<br><br>vs.<br><br>CREDIT MANAGEMENT SERVICES, INC., DANA K. FRIES, TESSA HERMANSON, JESSICA L. V. PISKORSKI, BRADY W. KEITH, MICHAEL J. MORLEDGE, TESSA HERMANSON,<br><br>Defendants. | **8:11CV436**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the named plaintiffs' second motion to certify a class, Filing No. 176. This is an action for violations of the Fair Debt Collection Practices Act, (FDCPA), 15 U.S.C. § 1692, *et seq.,* and the Nebraska Consumer Protection Act, (NCPA), Neb. Rev. Stat. § 59-1601, *et seq.*

I.    BACKGROUND

Relevant to the class certification issue are the plaintiffs' allegations that defendant CMS filed standardized collection complaints that were misleading in that they included amounts for recovery of prejudgment interest and attorneys' fees that are not authorized under Nebraska law and included misrepresentations concerning presenting a demand for payment. Filing No. 17, Amended Complaint at 4-5, 7-8; Exs. A and C. This court earlier certified a class action comprised of debtors who had received standardized collection complaints and standardized discovery materials from

CMS.[1]  Filing No. 105, Findings and Recommendations of the Magistrate Judge; Filing No. 150, Memorandum and Order.  On interlocutory appeal, the Eighth Circuit Court of Appeals ("Eighth Circuit") reversed this court's earlier class certification order and remanded for proceedings consistent with its opinion.  *See* Filing No. 150, Memorandum and Order; Filing No. 169, Eighth Circuit Opinion; *Powers v. Credit Management Services, Inc.*, 776 F.3d 567 (8th Cir. 2015).  The Eighth Circuit found that the classes, as certified, did "not meet the commonality, predominance, and superiority requirements of Rule 23."  *Id.* at 573.  The Eighth Circuit further stated that the classes, as certified, would require individualized assessments of the purported class-members state court collection actions.[2]  *Id.* at 571, 573.

_____

[1] The court certified four classes consisting of persons in Nebraska who were sent certain standard-form complaints and discovery materials by CMS during the relevant time periods of one year prior to the filing of this action for FDCPA claims and four years for NCPA claims.  Filing No. 105, Findings and Recommendations of the Magistrate Judge; Filing No. 150, Memorandum and Order. Plaintiffs have abandoned their request for certification of issues relating to discovery.

[2] In particular, the Eighth Circuit stated that for the class members of the Neb. Rev. Stat. § 45-104 sub-class to prevail on the 15 U.S.C. § 1692f claim,

> the records pertaining to every state court collection suit must be reviewed to determine: (i) whether CMS claimed prejudgment interest under § 45-104 (as in the Powers complaint, but not in the Palmer complaint); (ii) if claimed, did CMS recover prejudgment interest under § 45-104, making the alleged violation of FDCPA § 1692f(1) material, *see Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009); (iii) for every potentially material violation, whether the underlying consumer transaction reflects that CMS had a legitimate claim under § 45-104; (iv) whether plaintiffs' legal theory was litigated by the class member and resolved by the state court for issue preclusion purposes, *see generally Taylor v. Sturgell*, 553 U.S. 880, 891-93 (2008).

*Powers*, 776 F.3d at 571.  With respect to the Neb. Rev. Stat. § 25-1801 sub-class, the Eighth Circuit similarly noted that

> Even though the every standard-form complaint apparently included the ninety-day allegation, each class member's state-court collection suit must be examined to determine: (i) did CMS seek prejudgment interest under § 25-1801, as it did in the Palmer complaint but not in the Powers complaint; (ii) if so, did CMS personally provide the ninety-day presentation, in which case CMS complied with plaintiffs' interpretation of § 25-1801, or did CMS rely on an assignor's billing statement or demand for payment; (iii)

The Appeals Court also suggested that the court should have ruled on then-pending motions for summary judgment before certifying the class. *Id.* at 571 n.1. The Court noted two unresolved issues of law, which the court has now resolved, generally in favor of the plaintiffs. *Id.* at 571, 573. The Eighth Circuit also made other findings that are no longer relevant in view of the changed posture of the case.[3]

The plaintiffs now seek certification of two classes: a § 25-1801 class and a § 45-104 class, with subclasses created for the statute limitations period of one year under the FDCPA and of four years under the NCPA. *See* Filing No. 176, Motion. Plaintiffs propose certification as follows:

The § 25–1801 class consists of:

(i) all persons with addresses in Nebraska against whom Defendants filed a county court collection complaint in the form of Exhibit C (ii) which

---

did CMS recover prejudgment interest under § 25-1801, making the alleged FDCPA violation material; and (iv) was plaintiffs' legal theory litigated by the class member and resolved by the state court for issue preclusion purposes.

*Id.* at 573.

[3] In addressing the superiority prong under Fed. R. Civ. P. 23, the Eighth Circuit stated, with respect to the plaintiffs' allegations of misrepresentation in connection with attorney's names and signatures on pleadings, including discovery material, that the plaintiffs had not shown that a class action was superior to individual claims because "[e]ach class member may have a stronger claim against the individual attorney who signed the pleadings in that consumer's collection lawsuit." *Powers*, 776 F.3d at 572. That concern is no longer relevant in light of the plaintiffs' recasting of its proposed classes. Only a single pleading is at issue, the standard-form complaint. The evidence shows that all attorneys shared the cases and there are no allegations that any of the attorneys were acting outside the course and scope of their employment. *See* Filing No. 182-5, Ex. 3A, Hermanson Dep. at 51. Under agency principles, CMS, as the attorneys' employer, is vicariously liable for conduct in the scope and course of employment. *See* Filing No. 186, Memorandum and Order at 18-19. It does not appear that individual liability is at issue, except, perhaps, with respect to defendant Micheal Morledge as alter ego of the corporation, on a proper showing. *Id.* at 19.

The Eighth Circuit also found that this court had failed to address the legal question of whether the affirmative bona-fide error defense in 15 U.S.C. § 1692k(c) applies to FDCPA violations caused by the debt collector's misinterpretation of what is "permitted by" state law. Powers, *Id.* at 572. The bona-fide error defense is not at issue because the defendants did not assert it in their Answer and expressly disclaimed it in response to discovery requests. Filing No. 178-2, Ex. 2, Defendants' Answers to Interrogatories at 13, 21-22.

sought to recover attorneys' fees, prejudgment interest, and costs, pursuant to Neb. Rev. Stat. § 25–1801 (iii) where CMS did not personally provide the ninety-day presentation of the claim (iv) in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes.

The § 45–104 class consists of:

(i) all persons with addresses in Nebraska upon whom Defendants served a county court collection complaint in the form of Exhibit A (ii) which sought to recover prejudgment interest pursuant to Neb. Rev. Stat. § 45–104 (iii) in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes.

Filing No. 176, Motion at 2. The class definitions proposed in the plaintiffs' second motion apply to all defendants and do not involve a breakdown by attorney.

Defendants oppose the motion for certification, arguing that the motion is an improper attempt for reconsideration of the Eighth Circuit's opinion and is barred by res judicata and law of the case. Further, they contend the plaintiffs cannot satisfy the requirements of Fed. R. Civ. P. 23.

II. FACTS

Relevant facts are set forth in the court's order on the parties' motions for summary judgment and will be repeated only as necessary to the court's findings. The record shows that in the Powers collection lawsuit, Defendants sought to collect on "goods, services and/or labor" in the amount of $454.00. Filing No. 17, Amended Complaint, Ex. A, Powers collection complaint. The collection complaint states in Paragraph 4 that "GIKK ORTHO SPECIALISTS provided goods, services and/or labor to Defendant(s) and/or family members of Defendant(s). The reasonable value or

agreed amount of these services is $454.00 and such is a liquidated amount." The collection complaint further provides that "[p]laintiff requests prejudgment interest of $224.48 from 4/25/2007 to 6/7/11, pursuant to Sec. 45-104 and accruing prejudgment interest and attorney fees, as allowable by law." *Id.* Further it states "More than 90 days have elapsed since the presentation of this claim." *Id.*

In the Palmer collection complaint, CMS sought recovery of three amounts: $24.51 for goods, services and/or labor of Physicians of Ob/Gyn-Dr. Benjamin Ryder, stating the "reasonable value or agreed amount of these services is $24.51 and such amount is a liquidated amount"; $602.39 for goods, services and/or labor of Physicians of Ob/Gyn- Dr. Mary Kratoska, again stating $602.39 was the reasonable value of the services and the amount was liquidated; and $229.48 for services provided by Physicians of Ob/Gyn - Dr. Nancy Hicks, also stating the amount was reasonable and liquidated. *Id.*, Ex. C, Palmer collection complaint. In the Palmer collection complaint, CMS sought statutory attorney fees pursuant to Neb. Rev. Stat. §25-1801, and accruing prejudgment interest. *Id.* Further, it stated more than 90 days elapsed since the presentation of the claim. *Id.*

Undisputed evidence shows that the Palmer and Powers collection complaints are examples of standard form pleading routinely filed by CMS. Filing No. 85-2, Ex. 1A, Deposition of Tessa Hermanson ("Hermanson Dep.") at 52-54. CMS in-house counsel Dana Fries testified in her deposition that "if we were proceeding or asking for interest under that Nebraska revised statute [25-1801], that we have to be able to prove that more than 90 days has elapsed between the presentation of the claim and the date that we filed the claim" and that her understanding of "presentation" was when the debtor

5

was presented with the underlying bill. Filing No. 178-4, Ex. 3A, Deposition of Dana Fries ("Fries Dep.") at 26. CMS has never sent a notice to county court defendants by certified mail, return receipt requested required for unliquidated claims under Neb. Rev. Stat. § 45-103.02, nor did it present any claim 90 days in advance of filing the county court actions. Filing No. 50-8, Ex. 7, Answers to Requests for Admission at 13. Fries testified that every complaint contains the language that the claim is liquidated, in order for defendants to avail themselves of prejudgment interest under § 45-104. Filing No. 182-3, Ex. 2A, Fries Dep. at 47. Fries testified "liquidated means readily determinable or easily calculated." *Id.*

The record shows that allegation of the reasonable value of services were determined by relying on the assignor, or original creditor. Filing No. 178-6, Ex. 4A, Deposition of Tessa Hermanson ("Hermanson Dep.") at 58. CMS in-house counsel Hermanson regarded the claim presented 90 days in advance of filing the county court actions to be "the original creditor sending a bill." *Id.* at 60. She also testified no one at CMS sends a letter by certified mail on behalf of CMS prior to the filing of a lawsuit. *Id.* at 63.

CMS collects on a wide variety of debts, including medical, utilities, banks, landlord-tenant matters, storage, and dentists' and doctors' offices. Filing No. 182-5, Ex. 3A, Hermanson Dep. at 26. Dana Fries testified she could not give an example of a single commercial client. Filing No. 182-3, Ex. 2A, Fries Dep. at 11.

Hermanson acknowledged that the only difference between the Powers complaint and the Palmer complaints was the statute CMS was suing under. Filing No. 182-5, Ex. 3A, Hermanson Dep. at 52. Ms. Hermanson admits that all of CMS's

collection actions fall into one of two causes of action which are the subject of the present lawsuit, i.e., a suit under § 25-2801 and a suit under § 45-104, as evidenced by Exhibits A and C. *Id.* CMS in-house counsel Brady Keith testified that the collection actions were for breach of contract. [Filing No. 85-8](#), Ex. 2B, Keith Dep. at 31. Dana Fries testified the causes of action were "an implied contract of - quasi contract, unjust enrichment type theory" and "[c]ould also be a contract, a written contract theory." [Filing No. 109-1](#), Ex. 1A, Fries Dep. at 45. Hermanson also testified that the Powers collection complaint is based on "a contract for services provided" and the Palmer collection complaint is based "on implied contract to services provided, quasi contract theory." *Id.* Ex. 1B, Hermanson Dep. at 61.

CMS admits that the county court Complaints in the form of Exhibits A and C have been in use since at least 2008.[4] [Filing No. 85-2](#), Ex.1A, Hermanson Dep. at 53-54. The county court complaints are standard forms used by its attorneys on a regular basis, with only the names and amounts changed to suit the individual case. *Id.* CMS attorney Brady Keith testified that these county court complaints are standardized with the only variables being the defendant, the amounts and the creditor. [Filing No. 85-8](#), Ex.2B, Keith Dep. at 30-31.

Sherry Bergholz, CMS vice-president of administration, testified that the company's computer program generates reports that break down payments to the creditors on a monthly basis. [Filing No. 182-6](#), Ex. 3B, Deposition of Sherry Bergholz

---

[4] The relevant time period for NCPA claims commenced on December 18, 2007. Plaintiffs indicate they will not seek to include complaints filed between December 18, 2007 to December 31, 2007, in the class. *See* [Filing No. 181](#), Plaintiffs' Reply Brief at 9. The class certification will be structured accordingly.

("Bergholz Dep.") at 24; Filing No. 85-3, Ex. 1B, Deposition of Jason Morledge ("J. Morledge Dep.") at 46; Filing No. 86, Ex. 1C, Bergholz Dep. (restricted) at 6, 24. Carolyn Wicks, CMS bookkeeper and accountant, testified the company has special collection software and payments are posted into that. Filing No. 149-3, Ex. 1B, Deposition of Carolyn Wicks ("Wicks Dep.") at 16.  An account is maintained for every individual debtor where payment income is input and then kept. *Id.* at 19, 27.  The program is a specialized program developed for CMS. *Id.* at 20.  Records are kept that separate, for each file, interest and legal interest—which is interest accrued after the legal process has begun. *Id.* at 25.  Reports with the data are generated every day. *Id.* at 29. The CMS computer system tracks interest received from consumers as well as prejudgment interest received for every consumer. *Id.* at 25-27, 29.  CMS keeps the attorney fees and interest that it collects and puts it in the general account to pay such items as salaries. Filing No. 86-, Ex.1C, Bergholz Dep. (restricted) at 22.  The record shows CMS has collected "prior to judgment legal fees" and prejudgment interest. Filing No. 97-8, Ex. 2D, Garrett Dep. at 60-61.

Evidence establishes that the membership of each class can be readily determined by a review of the defendants' records and/or review of the records maintained on the state court's computerized filing system. Filing No. 79-12 to 79-20, Exs. 5C to 5K, JUSTICE system printouts.  CMS maintains computerized information that could be accessed by having CMS programmers run specific queries. Filing No. 97-3, Ex. 1B, Hermanson Dep. at 83-85; Filing No. 98-1, Ex.1A, Bergholz Dep. (restricted) at 24-25; Filing No. 97-8, Ex. 2D, Deposition of Janis Garrett ("Garrett Dep.") at Dep. Ex. 16.  Evidence shows that CMS's operations are highly computerized and

computer records include consumers' names, amounts and other relevant information on reports that are run monthly, and have been for years. Filing No. 97-3, Ex. 1B, Hermanson Dep. at 83-85; Filing No. 97-8, Ex. 2D, Barrett Dep., Dep. Ex. 16; Filing No. 98-1, Bergholz Dep. at 24-25. Every day CMS generates numerous revenue reports that are broken down specifically as to each consumer by revenue category (interest, legal interest, prejudgment interest, or legal fees). Filing No. 149-3, Wicks Dep. at 25-27. Payments are posted into special collection software. *Id.* at 16. CMS employs three information technology employees. Filing No. 97-3, Hermanson Dep. at 85.

CMS maintains and has produced records particular to the two named plaintiffs that break out categories of revenues (i.e., attorney fees, interest, and costs) received from that county-court collection defendant. Filing No. 97-8, Ex.2D, Barret Dep. at Dep. Ex. 16. Similarly, plaintiffs have shown that computer searches could be performed in the court's electronic filing system. Filing No. 182, Ex. 1, JUSTICE System website; Filing No. 182-4, Declaration of Pamela A. Car; Filing No. 79-12-79-20, JUSTICE printouts.

    III.    LAW

        A.    Class Action

"Rigorous analysis" is necessary to ensure that the plaintiffs satisfied all Rule 23 requirements for certifying a class. *Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 570 (8th Cir. 2015). This rigorous analysis often results in some overlap with the merits of the plaintiff's claim. *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S. Ct. 2541, 2551 (2011).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Id.* at 2550 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701, (1979)). Under Fed. R. Civ. P. 23, a class action may be maintained if the suit satisfies the criteria set forth in subdivision (a)—numerosity, commonality, typicality, and adequacy of representation—and it also must fit into one of three categories described in subdivision (b). *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 397 (2010) (noting that "[b]y its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action"); Fed. R. Civ. P. 23. "A party seeking class certification must . . . be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.

With respect to numerosity, the Eighth Circuit has not established a specific rule as to the necessary size of a class, but it has directed courts to consider several factors in determining whether joinder is feasible: the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the class members. *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *vacated on other grounds*, 487 U.S. 1229 (1988).

To demonstrate typicality, the putative class must show that the named parties' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). The burden on the plaintiff to prove typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The presence of a common legal theory, however, does not establish typicality

when proof of a violation requires an individualized inquiry. *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006) (involving a substantive due process claim that invariably "demands an exact analysis of circumstances before any abuse of power is condemned.").

"Commonality requires a showing that class members 'have suffered the same injury.'" *Powers*, 776 F.3d at 571 (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 157, (1982)). "However, '[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Id.* (quoting *Dukes*, 131 S. Ct. at 2551 (quotation omitted; emphasis in original)); *see Comcast Corp. v. Behrend*, ⎯⎯ U.S. ⎯⎯, 133 S. Ct. 1426, 1433, (2013) (allowing variation in damages unless "individual damage calculations . . . overwhelm questions common to the class"); *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 797 (8th Cir. 2014), *cert. granted*, 135 S. Ct. 2806 (2015); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir.1995) ("The fact that individuals . . . will have . . . claims of differing strengths does not impact on the commonality of the class"); *Mejdrech v. Met–Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) ("If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop."). In certain contexts "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 131 S. Ct. at 2551 and n. 5 (noting that commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of

a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence").

Further, the named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The inquiry also factors in competency and conflicts of class counsel. *Id.* at 626 n.20. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625–26 (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). A consumer who is eligible only for statutory damages can represent a class of persons who are eligible for both actual and statutory damages. *Keele v. Wexler*, 149 F.3d 589, 594-595 (7th Cir. 1998).

If the plaintiffs meet the requirements under Rule 23(a), they must then establish that their class fits into one of the provisions of Rule 23(b) in order to be certified. Fed. R. Civ. P. 23(b). The Supreme Court has explicitly determined that "individualized monetary claims belong in Rule 23(b)(3)." *Dukes*, 131 S. Ct. at 2558. For the plaintiffs to prevail on a motion for certification under Rule 23(b)(3), they must demonstrate the existence of superiority and predominance. Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of his or her claim is susceptible to classwide proof. *Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, ——U.S. ——, 133 S. Ct. 1184, 1196 (2013). Rather, all that is required is that a class plaintiff show that "common questions

'predominate.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member. *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013) (explaining that the lack of an individualized injury would impact predominance and mean that "individual questions necessary to determine breach of contract and bad faith" would include "individual inquiries" that would "predominate over" whether the defendant's claim-processing methodologies were reasonable.). For the purposes of class certification, however, plaintiffs cannot "identif[y] damages that are not the result of the wrong." *Comcast Corp. v. Behrend*, —— U.S. ——, 133 S. Ct. 1426, 1434 (2013); *Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (finding a common injury among all plaintiffs in an FDCPA action, a fraudulently procured default judgment). That is, "the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir.2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc.*, 521 U.S. at 625. "[C]ommon questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006)). "If the issues of liability are genuinely common issues, and the damages of individual class members can be readily

determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014); *see Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

The superiority requirement asks whether the class action is the best available method for resolving the controversy. *See* Fed. R. Civ. P. 23(b)(3). A significant consideration in evaluating superiority is whether the claims are too small to be litigated individually. *Amchem Prods., Inc.*, 521 U.S. at 617; *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (stating "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

The injury common to classes in an FDCPA action is the receipt of collection letters or pleadings that allegedly illegally add unauthorized collection fees to the amount claimed and misrepresent that the debtor will owe amounts to which he or she is not legally liable. *Keele*, 149 F.3d at 593. The essence of an FDCPA claim is that a debt collector has injured an individual in the collection process. *See, e.g.*, *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997). The damages recoverable for the class members' injuries may differ—some may be eligible for both actual and statutory damages, others actual damages only, and still others just statutory relief—but the fact remains that their injuries are the same. *Keele*, 149 F.3d at 593-94 (noting that the focus is on the debt collector's misconduct, not whether the debt is valid or whether the consumer has paid an invalid debt such as an unauthorized collection fee).

The FDCPA does not specify the amount of statutory damages to be awarded, but it imposes ceilings: in class actions the named plaintiff may receive no more than $1,000 and the class as a whole no more than the lesser of either $500,000 or 1 percent of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages. *Keele,* 149 F.3d at 593; *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997) (consumer may recover statutory damages only under FDCPA); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 781 (9th Cir. 1982) ("[S]tatutory damages are available without proof of actual damages" under the FDCPA.). "In other words, the Act is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not." *Keele*, 149 F.3d at 593-94.

"Class ascertainability is 'an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3).'" *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013); *see In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) (recognizing the implicit requirement of ascertainability in class actions). A plaintiff must show, by a preponderance of the evidence, that the class is "currently and readily ascertainable based on objective criteria." *Carrera*, 727 F.3d at 306 (quoting *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Ascertainability plays a key role as part of a Rule 23(b)(3) class action lawsuit because:

> First, at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class. Second, it ensures that a defendant's rights are protected by the class action mechanism. Third, it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action.

*Carrera*, 727 F.3d at 307.

        B.      Rooker-Feldman/Claim or Issue Preclusion/Law of the Case

The Rooker–Feldman doctrine deprives lower federal courts of jurisdiction to review state court judgments. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine also deprives lower federal courts of jurisdiction over claims that are "inextricably intertwined" with claims adjudicated in state court. *Id.* at 482 n. 16. A claim is inextricably intertwined under Rooker–Feldman if it "succeeds only to the extent that the state court wrongly decided the issues before it [or] if the relief requested . . . would effectively reverse the state court decision or void its ruling." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). The doctrine precludes both straightforward and indirect attempts to "undermine state court decisions." *Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000). The *Rooker–Feldman* doctrine[5] "is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

In the Eighth Circuit, claims attacking the decision of a state court are "distinguished from those attacking an adverse party's actions in obtaining and enforcing that decision." *MSK EyEs Ltd. v. Wells Fargo Bank, Nat. Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008); *see Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008)). "The

---

[5] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[*Rooker-Feldman*] doctrine does not apply to cases that raise independent issues."
*MSK EyEs Ltd.*, 546 F.3d at 539.   In the FDCPA context, Rooker–Feldman has not
been applied to FDCPA claims when the complaint lacks a "challenge [to] the validity of
the State court's judgment" or a "challenge [to] the underlying debt itself."   *See, e.g.,*
*Anderson v. Gamache & Myers, P.C.*, No. 07–336, 2007 WL 1577610, at *6 (E.D. Mo.
May 31, 2007); *Copeland v. Kramer & Frank, P.C.*, No. 09–310, 2009 WL 1684661, at
*3 (E.D. Mo. June 16, 2009).

      The doctrine of res judicata, or claim preclusion, bars the relitigation of a claim if
the prior judgment was a final judgment on the merits rendered by a court of competent
jurisdiction, and if the same cause of action and the same parties or their privies were
involved in both cases. *Baker v. Chisom*, 501 F3d. 920, 925 (8th Cir. 2007); *Jenkins v.
General Collection Co.*, 538 F. Supp. 2d 1165, 1171 (D. Neb. 2008).   Under the doctrine
of issue preclusion (also known as collateral estoppel), "once a court has decided an
issue of fact or law necessary to its judgment, that decision may preclude relitigation of
the issue in a suit on a different cause of action involving a party to the first case."
*Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 515 (8th Cir.1995) (quoting
*Allen v. McCurry*, 449 U.S. 90, 94 (1980)).   "'When an issue of fact or law is actually
litigated and determined by a valid and final judgment, and the determination is
essential to the judgment, the determination is conclusive in a subsequent action
between the parties, whether on the same or a different claim.'"   *Hunter v. City of Des
Moines*, 300 N.W.2d 121, 123 (Iowa 1981) (quoting Restatement (Second) of

Judgments s 68 (Tent. Draft No. 4, 1977)); *Powers*, 776 F.3d at 572 n.3. Only claims

raised and litigated are barred. *See Powers*, 776 F.3d at 572 n.3.[6]

Under the law-of-the-case doctrine, a court should not reopen issues decided in

earlier stages of the same litigation. *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889,

898 (8th Cir. 2015). "This policy of deference 'prevents the relitigation of a settled issue

in a case and requires courts to adhere to decisions made in earlier proceedings in

order to ensure uniformity of decisions, protect the expectations of the parties, and

promote judicial economy." *Id.* (quoting *In re Raynor*, 617 F.3d 1065, 1068 (8th Cir.

2010)). "Although the law-of-the-case doctrine binds a court to previous decisions in a

particular action, it is not without its limits: '[T]he doctrine does not apply if the court is

convinced that [its prior decision] is clearly erroneous and would work a manifest

injustice.'" *Id.* (quoting *Pepper v. United States*, 562 U.S. 476, 506-07 (2011)). "When

an appellate court remands a case to the district court, all issues decided by the

appellate court become the law of the case." *Raynor*, 617 F.3d at 1068.

---

[6] In the interlocutory appeal, the Eighth Circuit disagreed with this court's earlier finding that state court judgments were irrelevant to class certification, noting that "[b]ecause plaintiffs challenge CMS's use of a standard-form pleading, CMS is not liable under the FDCPA to any class member who unsuccessfully litigated this issue in state court." *Powers*, 776 F.3d at 572 n.3. Further, the Appeals Court noted that "[f]or class members whose state court collection suits are pending, a federal court has jurisdiction over overlapping FDCPA claims, but 'it would be proper for the district court to stay proceedings and direct that [plaintiffs] proceed to file their action as a permissive counterclaim in state court.'" *Id.* (quoting *Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1137 (8th Cir. 1981)).

The plaintiffs suggest that "little or no such litigation has occurred." Filing No. 181, Plaintiffs' Reply Brief at 26. As noted *infra* at 22 n.7, an individualized inquiry with respect to class-members who raised and litigated the FDCPA issue in state court, or have pending cases in which a permissive counterclaim could be raised, can be achieved with appropriate language in the class notice that either excludes those class-members or provides them an opportunity to opt out and pursue their FDCPA claims in the county-court actions. *See, e.g., Peterson*, 638 F.2d at 1137 (noting that although it would be proper for the district court to stay proceedings, "[i]f the state court does not accept jurisdiction over the subject matter asserted in the federal [FDCPA] complaint, or does not decide the issues which are the subject matter of this complaint [15 U.S.C. § 1692 claims], the federal court may then proceed to decide the issues.") *Id.*

Collection claims and FDCPA claims do not arise out of the same set of operative facts. *See, e.g., Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997); *Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1137 (8th Cir.1981) ("[a]lthough there is some overlap of issues raised in both cases as a result of the defenses raised in the state action, the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts.").

IV.     DISCUSSION

The court first finds that the plaintiff's motion is not an improper motion for reconsideration of the Eighth Circuit's opinion on the interlocutory appeal. The Eighth Circuit reversed this court's class certification order dated July 12, 2013. *Powers*, 776 F.3d at 575. It found only that a more rigorous analysis should be applied before granting class certification, not that no class could ever be certified in this case. Consistent with that mandate, this court addressed the Eighth Circuit's concerns. *See* Filing No. 186, Memorandum and Order at 1 n.1, 4, 17 n.9, 26 n.13. The law of the case doctrine is inapplicable to the issues presented herein. All of the issues decided by the appellate court are law of the case, but the plaintiff's second motion for class certification relates to a different class composition and involves determinations that were not made by the Eighth Circuit.

The plaintiffs' recasting of its motion and narrowing of the class solved many of the infirmities the Eight Circuit identified in its ruling on the earlier class certification. The plaintiffs dropped their claims that discovery materials violated the FDCPA and NCPA. The Eighth Circuit's most pressing concerns—including the rejection of the

"least sophisticated consumer" standard in connection with claims of misrepresentations in communications directed to persons represented by an attorney—related to the discovery-based allegations, which are no longer at issue. *See Powers*, 776 F.3d at 573-75. Also, the plaintiffs' showing with respect to the information contained within CMS's and the county courts records addresses the individualized inquiries raised by the Eighth Circuit. *See supra* at 18 n.6. The plaintiffs have shown that such individualized inquiries can be easily or expeditiously performed by utilizing targeted computer record searches. Further, they have shown that any remaining concerns can be remedied by the notice and opt-out procedures. Finally, should identifying the class prove to be overly burdensome or onerous, CMS can move for class decertification.

Next, the court finds certification is not barred by the *Rooker-Feldman* doctrine or by res judicata or collateral estoppel. The plaintiff's complaint addresses only the defendants' conduct in attempting to collect the debt and does not challenge the underlying debt itself. To succeed on their FDCPA claim, the plaintiffs do not need to show that the state court wrongly decided the issues before it. Any state court judgments remain intact—at issue is the defendants' conduct in obtaining the judgments. Although the FDCPA claims are related to the state-court actions in that they are based on conduct that occurred in connection with state-court pleadings, they are not inextricably tied to the state court actions because the plaintiffs do not seek review and rejection of the state court judgments. The plaintiffs do not challenge the validity of any state court judgments; rather, their FDCPA and NCPA claims exclusively address CMS's conduct in attempting to collect a debt. Although the claims are related

to the same underlying transaction, the legal issues and evidence related to the claims are distinct.

The court has conducted a rigorous analysis to ensure that the plaintiffs satisfied all Rule 23 requirements for certifying a class. The court has reviewed the materials submitted in favor of and against class-action certification, with an eye toward satisfying the concerns expressed by the Eighth Circuit. The court finds that the plaintiff has shown that class action certification is appropriate.

The second motion for class certification involves a proposed class of debtors who received complaints filed by CMS. Discovery materials are no longer at issue. The common contention among the class is that complaints filed by CMS were false or misleading in several particulars, including that the complaints sought interest and attorney's fees that were not allowed by law, and the complaints misrepresented the nature of the debt so as to obtain those additional amounts.

The misleading nature of the form complaints is pivotal to the lawsuit and capable of determination "in one stroke." *Dukes*, 131 S. Ct. at 2551. As framed by the Eighth Circuit, class certification in this case is appropriate "only if CMS's standard-form complaints, *on their face*, violate the FDCPA and therefore the NCPA." *Powers*, 776 F.3d at 570. The court has resolved that issue in the Memorandum and Order on the parties' motions for summary judgment, finding violations of the FDCPA and NCPA on the face of the complaints. Filing No. 186, Memorandum and Order.

Every potential class member's claim arises out of defendants' uniform practice of filing standard form complaints that sought collection of sums in addition to the underlying obligation that were not authorized by state law. The practice violates the

FDCPA and the NCPA. The determination of liability does not does not depend on individualized considerations. The issue of whether the form complaint violates the FDCPA has been determined as a matter of law. No individualized inquiry is necessary on the issue of liability. The few individual inquiries required—such as determination of individualized actual damages—do not defeat the predominance requirement.[7]

The class members here have all allegedly suffered the same injury—they received a debt collection complaint that sought a remedy not allowed by law and that mischaracterized the nature of the claim or amount of the debt obligation. The record establishes that the county court complaints in the form of Exhibits A and C have been in use since at least 2008 and that the county court complaints are representative of standard forms used by its attorneys on a regular basis, with only the names and amounts changed to suit the individual case.

The only individualized damages inquiries are those that turn on "the return of the money extracted from" class members as a result of unauthorized prejudgment interest or attorney's fees paid or as a result of artificially inflated settlements. We conclude that individual inquiries into the limited number of class members who will seek actual

---

[7] The plaintiffs have shown that the individualized review of records pertaining to every state court collection action can be performed within CMS's or the county court's computerized records to determine, as required under the Eighth Circuit's opinion, (i) whether CMS claimed prejudgment interest under § 45-104 or Neb. Rev. Stat. § 25-1801 (ii) whether and in what amount prejudgment interest or attorney's fees were recovered under Neb. Rev. Stat. § 45-104 or § 25-1801; (iii) if recovered, whether the underlying consumer transaction reflects that CMS had a legitimate claim under § 45-104 (that being on a written contract) or whether CMS personally provided the ninety-day presentation or relied on the demand; and (iv) whether plaintiffs' FDCPA theory was presented to or litigated in the state court for issue preclusion purposes. *See Powers,* 776 F.3d at 571, 573. The creation of subclasses with respect to the differing statutory bases satisfies the first inquiry. CMS's computerized records contain information with respect to amounts collected. Further, some of these individualized inquiries, including whether or not the FDCPA claim was litigated in state court, can be satisfied in either the notice or opt-out procedures contemplated under Fed. R. Civ. P. 23.

damages do not provide sufficient grounds on which to conclude that individualized damages issues predominate over common questions. This case presents the classic case for treatment as a class action:  that is, the commonality linking the class members is the dispositive question in the lawsuit. The issue of liability predominates over whatever individual inquiries will have to be performed to determine damages. Congress has devised a generally applicable formula for class action damages under the FDCPA, one which caps damages at $500,000 and provides that district courts consider, among other factors, the scope of the violations of the FDCPA as well as the number of individuals implicated by fraudulent debt collection practices.  15 U.S.C. § 1692k(b)(2).

The amounts of any money extracted from class-members can be determined by information stored in CMS's own records.  Because the evidence necessary to make out such damages claims, while individual, is easily accessible, such individual damage considerations do not threaten to overwhelm the litigation.  The information necessary to ascertain the class is either in the possession of the defendants or can be readily obtained from computerized court records. The plaintiffs have shown that it is sufficiently administratively feasible to identify the class through these records. Defendant CMS is a highly computerized operation and should be capable, with a proper query, to determine the class members and amounts, within its records.  That some debts may be shown to have been properly litigated or settled will not negate the showing that substantively identical complaints seeking unauthorized relief were sent to numerous individuals by CMS during the relevant period.  The court finds the plaintiffs have met their burden of demonstrating that the class is ascertainable.

The court finds that a class action is superior to other methods of adjudication of the controversy. Because of the ceiling on recovery and the difficulty of proving actual damages, an individual has little incentive to bring a solo action to vindicate his or her rights under the FDCPA. The court finds the defendants' assertions that it will take unreasonable amounts of time and effort to determine who is in the class and the amount of actual damages for each class member are not supported by the record.[8]

Further, the court is familiar with the experience and competence of proposed class counsel and finds proposed class counsel can adequately prosecute the interests of the class. Also, plaintiff's claim is typical of the claims of other putative class members, all of whom received the same allegedly misleading complaint. The record also shows that similar procedures were followed in all of the cases and all of the in-house counsel could review all of the cases.

In light of the consumer-protection goals of the FDCPA and NCPA, which permit, even encourage, consumers to act as private attorneys general to pursue FDCPA claims, the court finds certifying a reasonably ascertainable FDCPA class for statutory or actual damages will serve the purposes of the Act, which is targeted at abusive debt collector activities.

IT IS ORDERED:

1.    The plaintiffs' second motion for class certification (Filing No. 176) is granted;

---

[8] Evidence presented by the defendants did not establish with any particularity that a search of its records would be unduly burdensome. The evidence shows that CMS's operations are highly computerized, with customized computer accounting and record-keeping programs and it employs several information-technology professionals.

2.	A class is certified consisting of:

(i) All persons with addresses in Nebraska against whom Defendants filed a county court collection complaint in the form of Exhibit C after January 1, 2008, for purposes of the NCPA, and after December 18, 2010, for purposes of the FDCPA (ii) which sought to recover attorneys' fees, prejudgment interest, and costs, pursuant to Neb. Rev. Stat. § 25–1801 (iii) where CMS did not personally provide the ninety-day presentation of the claim (iv) in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes.  (The Neb. Rev. Stat. § 25-1801 Class)

(ii) All persons with addresses in Nebraska upon whom Defendants served a county court collection complaint in the form of Exhibit A after January 1, 2008, for purposes of the NCPA, and after December 18, 2010, for purposes of the FDCPA (ii) which sought to recover prejudgment interest pursuant to Neb. Rev. Stat. § 45–104 (iii) in an attempt to collect an alleged debt which, as shown by the nature of the alleged debt, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes.  (The Neb. Rev. Stat. § 45-104 Class)

3.	Plaintiffs' counsel shall arrange and initiate a conference call for the parties with United States Magistrate Judge Thomas D. Thalken within 7 days of the date of this order to schedule a planning conference.

Dated this 2nd day of February, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge